# UNITED STATES DISTRICT COURT

# DISTRICT OF ALASKA

MONIQUE R. SNEAD, Individually and as Personal Representative of the Estate of John H. Snead; JOHN G. SNEAD, Individually and as Trustee of the Snead Irrevocable Trust; MONIQUE R. SNEAD and JOHN G. SNEAD, both individually and as beneficiaries of the John H. Snead Revocable Trust and the Snead Irrevocable Trust,

    Plaintiffs,

vs.

GUADALUPE C. WRIGHT; and MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED,

    Defendants.

3:19-CV-00092 JWS

ORDER AND OPINION

[Re: Motion at Doc. 12]

## I. MOTION PRESENTED

At docket 12 Defendant Merrill Lynch, Pierce, Fenner & Smith (Merrill Lynch) moves the court to compel arbitration and enter a stay of this federal action, relying on account agreements executed by the decedent, John H. Snead. Plaintiffs Monique R. Snead and John G. Snead, in their various capacities (collectively Plaintiffs or the Sneads), oppose the request at docket 24. Lynch replies at docket 29. Oral argument was requested but denied as unnecessary.

## II. BACKGROUND

This federal action involves a dispute about two Merrill Lynch accounts opened by John H. Snead, the father of Plaintiffs, who died in August of 2017. Plaintiffs allege that Defendant Guadalupe Wright, who had been in a long-term relationship with John H. Snead up through his death and an employee of Merrill Lynch at that time, unlawfully transferred funds from John H. Snead's Merrill Lynch trust accounts—the John H. Snead Revocable Trust (Revocable Trust) and the Snead Irrevocable Trust (Irrevocable Trust). The Sneads filed their complaint individually and as the beneficiaries of the Revocable Trust and Irrevocable Trust. John G. Snead also sued as the trustee of the Irrevocable Trust, and Monique Snead sued as the personal representative of her father's estate. This federal action includes one claim against Defendant Wright, alleging she unduly influenced John H. Snead near his death and wrongfully removed funds from the trusts. The other claims are brought against Merrill Lynch. The Sneads allege that Merrill Lynch breached its fiduciary duty and was negligent regarding the trusts, that it is vicariously liable for Defendant Wright's actions, and that it was negligent in hiring, training, and supervising Wright.

Merrill Lynch now moves to have the case stayed for arbitration. It relies on account forms John H. Snead signed wherein he agreed that any controversies between himself and Merrill Lynch would be arbitrated. The first form is Cash Management Account (CMA) Application and Agreement Form (CMA Form) signed in 1998 when the decedent opened a CMA with Merrill Lynch. Merrill Lynch asserts that the account was opened for the Revocable Trust. The second form is a Client Relationship Agreement (Client Agreement) that decedent signed in 2016 in conjunction with the opening of another Merrill Lynch account. Merrill Lynch asserts that this second account was opened for the Irrevocable Trust. Plaintiffs oppose the request for arbitration, arguing that they are not bound to arbitrate pursuant to the forms that they did not sign.

## III.  STANDARD OF REVIEW

"A party seeking to compel arbitration has the burden under the [Federal Arbitration Act] to show (1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue."[1] Despite a "liberal federal policy favoring arbitration agreements,"[2] state law plays a role in federal arbitration analysis.  The first element, whether a valid agreement to arbitrate exists between the parties, is determined by state law governing contract formation.[3] Therefore, "contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening [the Federal Arbitration Act]."[4]  Relatedly, the question of who is bound by or can enforce an agreement to arbitrate is also a question determined by state law.[5]

As for the second element, whether the dispute between the parties is within the scope of the arbitration agreement, the Federal Arbitration Act creates a substantive body of law to apply to disputes about what issues are subject to arbitration; however, it does not entirely displace state law.[6]  The act requires courts to apply a presumption in favor of arbitration, but to apply state law principles of contract interpretation when analyzing the scope of the agreement.[7]  "Under the federal presumption, if the

---

[1] *Ashby v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015).

[2] *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

[3] *Ingle v. Circuit City Stores, Inc*., 328 F.3d 1165, 1170 (9th Cir. 2003).

[4] *Doctor's Assocs., Inc. v. Casarotto*, 517 US 681, 687 (1996).

[5] *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009); *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013).

[6] *See Hopkins & Carley, ALC v. Thomson Elite*, No. 10-CV-05806-LHK, 2011 WL 1327359, at *2 (N.D. Cal. Apr. 6, 2011).

[7] *Radnet, Inc. v. Travelers Prop. Cas. Co. of Am.*, Nos. CV-11-6041, CV-11-6044, 2012 WL 13009125, at *2 (C.D. Cal. Feb. 21, 2012) (citing *Comedy Club, Inc. v. Improve W. Assocs.*, 553 F.3d 1277, 1284 (9th Cir. 2009)).

arbitration provision is reasonably susceptible to an interpretation under which the dispute at issue is arbitrable, construed liberally but using state law principles of contract interpretation, then [the court] must grant [the motion to compel arbitration]."[8]

## IV. DISCUSSION

Merrill Lynch asks the court to stay this federal case in favor of arbitration. As noted above, Merrill Lynch bears the burden of demonstrating that arbitration is warranted. It argues that John H. Snead had agreed to arbitrate all disputes with Merrill Lynch when he opened his various trust accounts with the company and that the Plaintiffs, as beneficiaries and/or trustees of those trusts, are bound by his agreement to arbitrate. A party generally cannot be required to arbitrate under an agreement which he did not sign.[9] However, "nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles."[10] Merrill Lynch argues that Plaintiffs are bound to arbitrate based on equitable estoppel and because they are third-party beneficiaries of the account relationship between their father and Merrill Lynch.

As noted above, this court must look to state law when determining whether a nonsignatory can enforce or be bound by an agreement to arbitrate. Neither Merrill Lynch nor Plaintiffs adequately address the issue of which state law to apply and how to best apply that law to this situation. Plaintiffs cite a Ninth Circuit case, *Comer v. Micor, Inc.*[11] In *Comer*, the plaintiff was an ERISA-plan participant who sued the managers of the plan for breach of fiduciary duty. The managers had an agreement with the plan's trustees and that agreement contained an arbitration provision. The managers argued

---

[8]*Id.*

[9]*AT&T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (noting that arbitration "is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit" (internal quotations omitted)).

[10]*Letizia v. Prudential Bache Secs., Inc.*, 802 F.2d 1185, 1187 (9th Cir. 1986).

[11]436 F.3d 1098 (9th Cir. 2006).

-4-

that the plaintiff should be bound by the arbitration provision in the agreement even though he was not a party to it based on equitable estoppel, which precludes parties from claiming the benefits of a contract while simultaneously avoiding its burdens.[12] They argued that the plaintiff should be precluded from avoiding arbitration because he was seeking to enjoy the benefit of a well-managed plan. The court rejected the managers' position holding that the non-signatory, who did not seek to enforce the terms of the management agreement and did not sue under its provisions, did not "knowingly exploit" the agreement and therefore could not be estopped from avoiding arbitration.[13]

The managers also argued that the plaintiff could be bound by the agreement to arbitrate based on a third-party beneficiary theory. The court noted that an arbitration agreement could be enforced against a nonsignatory under such a theory where "the contract reflects the express or implied intention of the parties to the contract to benefit the third party."[14] The court concluded that the signatories to the investment management agreements did not intend to give the beneficiaries of the plan the right to enforce the agreements, and therefore the plaintiff was not bound to arbitrate under a third-party beneficiary theory.[15] The fact that the plaintiff's claim for breach of fiduciary duty generally arose out of the underlying investment management agreement did not create third-party beneficiary status or otherwise require plaintiff to arbitrate under the agreement.[16]

Under *Comer*, Plaintiffs are correct that equitable estoppel does not require arbitration because they are not seeking to enforce the terms of the bank agreements,

---

[12]*Id.* at 1101.

[13]*Id.* at 1102.

[14]*Id.* at 1102 (internal quotation marks omitted).

[15]*Id.*

[16]*Id.* at 1102-03.

and they cannot be forced to arbitrate as third-party beneficiaries because there is no evidence that they are the intended beneficiaries of the agreements themselves. While Comer does in fact support Plaintiffs position that they cannot be required to arbitrate as non-signatories to the contract, federal common law is no longer applicable to the determination of who is bound by an arbitration agreement.[17]

Merrill Lynch, however, does not point to governing state law that would allow the court to find in its favor. It cites cases from New Jersey, California, New York, and Texas to argue that Plaintiffs should be required to arbitrate as trustees, beneficiaries, and personal representatives. However, Merrill Lynch fails to conduct the choice of law analysis that must be done to determine which state law to apply in the first instance. Indeed, the state law does not appear to be uniform on this issue.[18]

This court must look to Alaska law to make a choice of law determination. Alaska courts use the Restatement (Second) of Conflict of Laws (Restatement) to guide choice of law issues.[19] Here, the agreements containing the arbitration provisions that Merrill Lynch relies on to support its motion require the application of New York law. Alaska looks to Restatement § 187 when the contract at issue includes a choice-of-law provision. Section 187 provides in part as follows:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

---

[17] *See Dylag v. W. Las Vegas Surgery Ctr., LLC*, 719 Fed. Appx. 568 570, 570 n.2 (noting that under *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009), courts must apply state law when determining whether non-signatories of an arbitration agreement may be bound by the agreement and noting that prior to *Arthur Andersen* courts applied federal common law in addressing arbitration provisions governed by the FAA).

[18] *Compare Harvey ex rel. Gladden v. Cumberland Trust & Inv. Co.*, 532 S.W.3d 243, 270-71 (Tenn. 2017), *and Clark v. Clark*, 57 P.3d 95, 98-99 (Okla. Civ. App. 2002) *with Merrill Lynch, Pierce, Fenner & Smith v. Eddings*, 838 S.W.2d 874 (Tex. App.1992), *and In re Blumenkrantz*, 824 N.Y.S.2d 884 (Surr. Ct. 2006).

[19] *Long v. Holland Am. Line Westours, Inc.*, 26 P.3d 430 (Alaska 2001).

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.[20]

Again, the parties did not conduct the requisite analysis, but the court's conclusion is that New York has no substantial relationship to the parties or the transaction and there is no other basis for the application of New York law here. Therefore, Alaska law should apply to the issue.

Based on the court's review, there does not appear to be any case law from the Alaska Supreme Court directly on point as to whether equitable estoppel or some other contract principle could bind a non-signatory to an arbitration agreement. Given this absence of controlling law, this court must predict how the Alaska Supreme Court would decide the issue.[21] That is, this court would have to determine whether the state court would follow *Comer* and other states that apply estoppel principles to bind nonsignatories to an agreement to arbitrate only when the plaintiff seeks to enforce the terms of the agreement itself or whether the court would more broadly apply estoppel or third-party beneficiary principles to require arbitration given that Plaintiffs' fiduciary duty and negligence claims generally arise out of the contractual relationship between Merrill Lynch and John H. Snead.[22] The court declines to make such a determination absent adequate briefing on the part of the moving party, although it is inclined to believe that *Comer* would be persuasive to the decision.

---

[20] Restatement (Second) of Conflict of Laws § 187 (1971).

[21] *See Ticknor v. Choice Hotels Int'l*, 265 F.3d 931, 939 (9th Cir. 2001) (stating that a federal court in a diversity action must approximate state law when the state's highest court had not decided an issue).

[22] This raises the related issue of the source of Merrill Lynch's fiduciary duty under Alaska law.

Even if the applicable state law obligated beneficiaries or trustees to arbitrate under the circumstances the court cannot conclude that arbitration is warranted here based on the record provided.[23] Merrill Lynch relies on one form purportedly linked to the Revocable Trust and one form purportedly linked to the Irrevocable Trust to show that John H. Snead agreed to arbitrate all claims related to his trust accounts. As for the Revocable Trust, Merrill relies on the CMA Form John H. Snead signed in January of 1998 when he opened a management account with Merrill Lynch. The form directs the applicant to indicate whether the account is to be a trust account, but John H. Snead did not fill out that section of the form. Moreover, he did not sign as a trustee or otherwise indicate on the form that he was opening the account for trust assets. The declaration provided in conjunction with the form gives the account number linked to this CMA, but does not attest to the fact that it was opened as a trust account.[24] Given this lack of information, the court cannot say with certainty that John H. Snead's signature on this form bound any future trustee of the Revocable Trust to arbitrate or otherwise compels arbitration of any claims related to the Revocable Trust. As for the Irrevocable Trust, Merrill Lynch relies on the 2016 Client Agreement. While John H. Snead signed the form as a "trustee," it appears that he was signing as the trustee of the Revocable Trust based on the account title he listed on the form. Merrill Lynch's declaration supporting the document does not explain the discrepancy. Even if this document had been created in connection to the Irrevocable Trust, John H. Snead does not appear to have been the trustee of the Irrevocable Trust. Merrill Lynch has not adequately

---

[23]The court recognizes that Monique Snead has sued in her capacity as the personal representative of her father's estate but given the concession that the trusts assets are separate from the estate (Doc. 22 at p. 7) and this federal action only involves allegations related to the two trusts, it is not clear to the court how Monique's status as a personal representative would change the arbitration analysis here.

[24]The affidavit merely labels the account as the "Revocable Account" but nothing in the affidavit or form itself provides verification that the account associated with form is in fact the revocable trust account.

explained the genesis of this form or argued why John H. Snead's signature on the form would require arbitration of any claims related to the Irrevocable Trust.

### V.  CONCLUSION

Based on the preceding discussion, Defendant's motion to stay at docket 12 is DENIED.

DATED this 28th day of July 2019.

/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT