# UNITED STATES DISTRICT COURT
# DISTRICT OF ALASKA

MONIQUE R. SNEAD, Individually and as Personal Representative of the Estate of John H. Snead; JOHN G. SNEAD, Individually and as Trustee of the Snead Irrevocable Trust; MONIQUE R. SNEAD and JOHN G. SNEAD, both individually and as beneficiaries of the John H. Snead Revocable Trust and the Snead Irrevocable Trust,

    Plaintiffs,

vs.

GUADALUPE C. WRIGHT; and MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED,

    Defendants.

3:19-CV-00092 JWS

**ORDER AND OPINION**

[Re: Motion at Doc. 15]

## I. MOTION PRESENTED

At docket 15 Defendant Guadalupe C. Wright (Wright) moves for a stay of this federal action pending resolution of a state court case, Alaska Superior Court Case No. 3AN-17-09177, pursuant to the *Colorado River* state court deference doctrine.[1] Plaintiffs Monique R. Snead and John G. Snead, in their various capacities (collectively Plaintiffs or the Sneads), oppose the request at docket 23. Wright replies at docket 26. Oral argument was requested but denied as unnecessary.

---

[1] *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-19 (1976).

## II. BACKGROUND

In September of 2017, Monique Snead filed a complaint against Wright in Superior Court for the State of Alaska. She filed as the personal representative of the estate of her father, John H. Snead. John H. Snead had been in a long-term relationship with Wright up until his death on August 7, 2017. The state court complaint against Wright alleges that leading up to her father's death, when he was "in poor health" and "not competent to make financial or legal decisions," Wright took property that belonged to John H. Snead and unduly influenced or coerced him to transfer ownership of property to her.[2] It also alleges that Wright unlawfully transferred funds without authority from accounts belonging to John H. Snead, his estate, and the Snead Irrevocable Trust—a Merrill Lynch trust account pursuant to which Monique Snead and her brother, John G. Snead, were beneficiaries, with John G. Snead as the trustee. The state court complaint raised a claim for conversion of property, including the money in the trust, and a claim for undue influence.[3]

The parties exchanged discovery. As part of the discovery process Monique Snead, in her representative capacity, provided responses to Wright's interrogatories and requests for production. As part of her response to an inquiry about the basis for her undue influence claim, Monique Snead indicated that Wright had coerced her father to withdraw funds from her father's Merrill Lynch revocable trust account, the John H. Snead Revocable Trust and the Snead Irrevocable Trust account.[4] Monique Snead also issued a Rule 30(b)(6) deposition notice to Merrill Lynch and indicated that she was seeking information about her father's various trust accounts and withdrawals made from those accounts.[5] She requested information about Wright's employment with

---

[2] Doc. 16-2 at p. 2, ¶ 6.

[3] Doc. 16-2 at pp. 3-4.

[4] Doc. 16-3.

[5] Doc. 16-4.

Merrill Lynch and information about Wright's position with the company in relation to John H. Snead's accounts.

In the Spring of 2018, the parties litigated an attorney-client privilege issue in state court.[6] Wright argued that the attorney-client privilege should be waived in relation to certain communications between John H. Snead and his attorneys. The court found in Wright's favor and granted her request for attorneys' fees in connection with the motion. Monique Snead filed a motion for reconsideration, but the request was denied.

A few months later, Monique Snead filed an offer of judgment for $10,000.[7] She later filed a "Notice to the Court Regarding Pending Settlement" wherein she informed the state court that the parties had reached an agreement to settle the case and were formalizing the settlement paperwork.[8] The final agreement drafted by her counsel stated that the settlement covered all claims raised between the parties. The parties agreed not to file any further lawsuits or other proceedings or make any demands involving or relating to any of the claims, although the agreement reserved any claims that the Sneads had against Merrill Lynch.[9] The parties, however, never signed the final paperwork. Instead, counsel indicated that Monique Snead and her brother wanted to proceed with litigation.[10]

In April of 2019, Monique filed the current federal lawsuit against Wright and Merrill Lynch. Rather than filing just as the personal representative of her father's estate, she also filed individually and as the beneficiary of the John H. Snead Revocable Trust and the Snead Irrevocable Trust. Her brother, John G. Snead, was also included as a plaintiff— individually, as the trustee of the Snead Irrevocable Trust, and as

---

[6]Dos. 16-6, 16-7, 16-8.

[7]Doc. 16-9.

[8]Doc. 16-10.

[9]Doc. 16-11.

[10]Doc. 16-12.

beneficiary of the two trusts. The federal lawsuit includes one claim against Wright, alleging she wrongfully removed funds from the trusts. The other claims are brought against Merrill Lynch wherein the Sneads allege that Merrill Lynch breached its fiduciary duty regarding the trusts, that it is vicariously liable for the actions of Wright, and that it was negligent in hiring, training, and supervising Wright.

## III. STANDARD OF REVIEW

Defendant Wright requests that the federal claim for undue influence against her be stayed pending the concurrent and parallel state court action against her. She argues that a stay is warranted under the *Colorado River* doctrine, which is "a form of deference to state court jurisdiction"[11] that may be applied when "traditional abstention principles do not apply, yet considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, nonetheless justify a decision to stay or dismissal of federal proceedings pending resolution of concurrent state court proceedings."[12] The circumstances in which the doctrine should be applied, however, are "exceptional" and "rare."[13] The doctrine is a "narrow exception to the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them."[14]

A precondition to the application of the *Colorado River* doctrine is that the state and federal claims be "substantially similar."[15] "Exact parallelism" is not required.[16] It is

---

[11] *Coopers & Lybrand v. Sun-Diamond Growers of CA*, 912 F.2d 1135, 1137 (9th Cir. 1990).

[12] *Smith v. Cent. Ariz. Water Conservation Dist.*, 418 F.3d 1028, 1032-33 (9th Cir. 2005).

[13] *R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 977-78 (9th Cir. 2011).

[14] *Smith*, 418 F.3d at 1033 (internal quotation marks omitted).

[15] *Seneca Ins. Co. v. Strange Land, Inc.*, 862 F.3d 835, 845 (9th Cir. 2017).

[16] *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1999).

sufficient if the "same relevant conduct" and "same pertinent parties" are involved.[17] If the claims are substantially similar, courts must consider eight different factors to determine whether the circumstances warrant a stay:

> (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.[18]

"These factors are to be applied in a pragmatic and flexible way, as part of a balancing process rather than as a mechanical checklist."[19] Some factors may not apply, and "doubt as to whether a factor exists should be resolved against a stay.[20]

## IV. DISCUSSION

### A. Substantial Similarity

The claims against Wright in state court are substantially similar to the claim against her in this federal action, thereby satisfying the threshold *Colorado River* question. The state court claims against Wright are for undue influence and conversion and are based in large part on her alleged relation to the unauthorized withdrawal of money from the two trust accounts. The federal court claim against Wright is for "Wrongful Removal of Assets" and undue influence and, like the state court claims, are based on her alleged relation to the unauthorized withdrawal of money from the same accounts. Therefore, the actions against Wright in state and federal court arise out of the same alleged conduct and seek to vindicate the same rights.

---

[17]*Montanore Minerals Corp. v. Bakie*, 867 F.3d 1160, 1170 (9th Cir. 2017).

[18]*R.R. St.*, 656 F.3d at 978-79 (internal footnotes omitted).

[19]*Am. Int'l Underwriters (Philippines), Inc. v. Continental Ins. Co.*, 843 F.2d 1253, 1257 (9th Cir. 1988).

[20]*Seneca Ins. Co.*, 862 F.3d at 842.

-5-

The Sneads argue that the actions are not sufficiently similar because the state court action was brought by the estate of John H. Snead, with Monique Snead bringing the action only in her capacity as the representative of her father's estate. They argue that the state court action "contains no claims from a party with standing to seek relief related to the Trusts."[21] The court is not persuaded that the differences in how the Sneads decided to pursue their two complaints makes the claims against Wright dissimilar for purposes of a *Colorado River* analysis. As noted by Wright in her reply brief, a simple "head count" that "ignor[es] the substance of the claims brought and the interests represented in the state court action" is not the appropriate process for determining substantial similarity.[22] Indeed, the determination of whether to stay federal proceedings under *Colorado River* does not rest on some "mechanical checklist" but rather is a pragmatic and flexible analysis.[23]

The pertinent parties in the state and federal cases are the same. Both actions are spearheaded and directed by Monique Snead and John G. Snead in their various capacities related to their father's estate and trusts. Both Monique Snead and John G. Snead are represented by the same attorney and that attorney is litigating both the state court case and the federal case. Both individuals have been involved in the state court case.[24]

While the estate is the only plaintiff in the state case, the complaint and discovery clearly show that the primary goal of that case is not simply to recover real and personal property that allegedly belong to the estate but also to recover money that was wrongfully taken from the Snead trusts. That is to say, it is clear that the state complaint is raising claims on behalf of the Snead Irrevocable Trust and the John H. Snead

---

[21]Doc. 23 at p. 6.

[22]Doc. 26 at p. 2.

[23]*Am. Int'l Underwriters*, 843 F.2d at 1257.

[24]Doc. 26-2; 16-12;

Revocable Trust.²⁵ Moreover, as pointed out by Wright, the value in the state case rests primarily on the allegations surrounding the two trusts—the value of the money alleged to have been wrongfully taken out of the Snead Irrevocable Trust amounts to over $500,000 with an additional amount of around $300,000 taken from the revocable trust account, while the value of the property alleged to have been wrongfully diverted from the estate prior to John H. Snead's death is around $200,000. The Sneads now argue that they filed this federal case after realizing that the trusts lie outside of the estate, but the court finds such an argument disingenuous, as the trust documents were in the estate's possession at least at the time initial disclosures were exchanged and the trust documents show that the trust assets were separate.²⁶ The estate nonetheless pursued the trust allegations in state court.

Monique Snead, as representative of the estate, has litigated the trust claims in state court and in turn has protected the interests of herself and her brother as the two beneficiaries of the trusts. The fact that Monique Snead did not pursue the state court claim in her capacity as a beneficiary or include her brother in the suit in his capacity as beneficiary and trustee is of no consequence here, as under Alaska law neither the trustee nor the beneficiaries are necessary parties to an action involving a trust as long as that trust's beneficiaries are being adequately represented.²⁷

---

²⁵The complaint alleges that Wright wrongfully withdrew or transferred funds "from accounts belonging to Mr. Snead" (Doc. 16-2 at ¶ 8) and Monique Snead's answers to Wright's interrogatories makes clear that her allegations involve the withdrawal of money from the John H. Snead Revocable Trust (Doc. 16-3 at p.4). Monique Snead propounded discovery in the state case that focused on gathering information about the withdrawals from both of the Snead trust accounts (Doc. 26-4 at pp. 7-8; doc. 16-4).

²⁶*See* doc. 26-3.

²⁷*In re Pac. Marine Ins. Co. v. Harvest States Coop.*, 877 P.2d 264, 269 (Alaska 1994).

The inclusion of Merrill Lynch as a defendant in this federal action does not make it dissimilar from the state action. Wright is seeking only a stay as to the federal claim against her. Partial stays under the *Colorado River* doctrine are permissible.[28]

**B.     Colorado River Factors**

Having determined that the state and federal claims against Wright are substantially similar, the court turns to the specific factors that determine whether a stay under *Colorado River* is appropriate. The first two factors—which court first assumed jurisdiction over any property over which jurisdiction has been asserted and the inconvenience of the federal forum—are not relevant to the analysis. There is no property at stake and both state and federal courts are located in Anchorage, Alaska. Therefore, these two factors can be disregarded in the court's balancing process.[29]

      **1.     Avoiding piecemeal litigation**

"Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results."[30] However, "[a] general preference for avoiding piecemeal litigation is insufficient to warrant abstention" because "[a]ny case in which *Colorado River* is implicated will inevitably involve the possibility of conflicting results, piecemeal litigation, and some duplication of judicial efforts . . . ."[31] There must be exceptional circumstances that make piecemeal litigation "particularly problematic."[32] Exceptional circumstances can include a clear federal

---

[28]*See ScripsAmerica, Inc. v. Ironridge Global LLC*, 56 F. Supp. 3d 1121, 1146-47 (C.D. Cal. 2014) (explaining that district courts in the Ninth Circuit have found partial stays permissible "where some, but not all, of a federal plaintiff's claims are pending in a parallel state action.").

[29]*See Nakash*, 882 F.2d at 1415 n.6 (noting that factors that are irrelevant to the particular situation are disregarded).

[30]*Am. Int'l Underwriters*, 843 F.2d at 1258.

[31]*Seneca Ins. Co.*, 862 F.3d at 842 (internal quotation marks omitted).

[32]*Id.* at 843.

policy that the claims should be tried in state courts or some other "special or important rationale" for staying the federal action.[33]

The fact that the claims against Wright proceeded to near completion in state court suggests that duplicative litigation could be particularly problematic. The parties already exchanged discovery and litigated the issue of whether the attorney-client privilege between John H. Snead and his attorneys had been waived. Wright prevailed on that motion. Monique Snead filed an offer of judgment and a notice of settlement. The court entered an order enforcing the settlement. While the state court later allowed the estate to file a late opposition to the motion to enforce the settlement and is now considering the matter anew, relitigation of the same issue in federal court while the state court case is considering whether the matter has in fact been settled appears to present a unique problem of wasted judicial efforts. However, in the event this specific circumstance is insufficient to meet the piecemeal litigation factor, the court finds that a stay is nonetheless warranted because, as set forth below, the balance of the remaining factors still weigh strongly in favor of a stay.

### 2. The Order in Which the Forums Obtained Jurisdiction

Another factor to consider is which of the forums first obtained jurisdiction. This factor compares not just the filings dates of the two actions but also the relative progress made in the two proceedings.[34] The state court case was filed over a year and a half before this federal action. Discovery and motion practice have already occurred in the state case. As noted above, the case has proceeded to a dispute about whether the parties in fact have an enforceable settlement agreement that would resolve the matter. Given the substantial progress that has occurred in the state court litigation, the

---

[33]*Id.*

[34]*Montanore*, 867 F.3d at 1168.

Sneads "should . . . be bound by its initial choice of the state forum."[35] Therefore, this factor weighs strongly in favor of a stay.

### 3. Source of Law

Which source of law governs the dispute is a more influential factor when there are federal issues presented or when the state law is particularly complex or difficult enough to render the state court better suited to apply the law.[36] The issue of whether Wright unduly influenced and took money from the Snead trust accounts will be resolved under state law. There are no federal issues presented here that would weigh in favor of denying a stay, but neither are there complex matters of law presented here that weigh in favor of a stay. Therefore, the court finds that this factor is neutral to the analysis.

### 4. Adequacy of the Forum to Protect the Rights of the Federal Litigants

"A district court may not stay or dismiss the federal proceeding if the state proceeding cannot adequately protect the rights of the federal litigants."[37] Here, the Sneads do not contend that they are unable to allege any cause of action in the state action, that the state court lacks jurisdiction to hear the claims asserted in this case, or that the state court cannot grant the relief sought. However, this factor, like source of law, "is more important when it weighs in favor of federal jurisdiction."[38] That is, the fact that state court will adequately protect the litigants' rights may weigh in favor of granting a stay, but it is not a highly influential factor in the overall balancing process.

---

[35]*Am. Int'l Underwriters*, 843 F.2d at 1259.

[36]*See, e.g, Nakash*, 882 F.2d at 1416; *Davis v. Koz*, No. 2:18-cv-06597, 2018 WL 6444896, at *3 (C.D. Cal. Dec. 04, 2018).

[37]*R&R St.*, 656 F.3d at 981.

[38]*Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1370 (9th Cir. 1990) (internal quotation marks omitted).

### 5. Avoiding Forum Shopping

The forum shopping factor considers "whether either party improperly . . . pursued suit in a new forum after facing setbacks in the original proceeding."[39] Monique Snead filed suit in state court in September of 2017. The parties conducted discovery and a dispute arose about whether the attorney-client privilege should apply to communications between John H. Snead and his attorneys. The court ruled in favor of Wright on that matter, and the Sneads subsequently decided to settle with Wright. In September, Monique Snead filed a notice of settlement and represented to the court that they had a settlement agreement and were finalizing paperwork. Counsel for Monique Snead drafted the paperwork and sent it to Wright's counsel. The Sneads then changed their minds about the settlement, and in March 2019 informed Wright that they wanted to proceed with the lawsuit. Within a month the Sneads had filed a complaint in federal court. As noted above, while the federal complaint adds Merrill Lynch as a defendant, it raises the same allegations against Wright with the same goal—to recover money they believe she wrongfully took from the trusts. Based on the sequence of events, the court concludes that the Sneads were seeking to avoid the state court proceedings and potential enforcement of the settlement when they filed in federal court. This factor weighs strongly in favor of a stay.

### 6. Resolution in State Court

This final factor is part and parcel of the threshold question of similarity. The court must look at whether the state and federal claims are similar enough that the state court can fully resolve the issues between the parties.[40] Given that the claim against Wright in federal court is essentially the same as the claims against her in state court, as more particularly explained above, the court has confidence that the state litigation can end the dispute between the Sneads and Wright. Indeed, if the state court finds

---

[39]*Seneca Ins. Co.*, 862 F.3d at 846.

[40]*Montanore*, 867 F.3d at 1170.

-11-

that the parties had an agreement to settle and enforces that agreement, the Sneads' litigation with Wright ends. If the court does not enforce the settlement agreement, the parties can continue to litigate the matter to a resolution in state court. Indeed, as noted above, the state court has been presiding over the matter for almost two years and has made far more progress towards resolution than this court.

**C.     Balancing the Colorado River Factors**

Taking the relevant factors into consideration, five of the six favor a stay. The order in which the forums obtained jurisdiction, the desire to avoid forum shopping, and the ability of the state court to resolve the issues between the Sneads and Wright all weigh strongly enough in favor of a stay to tip the balance away from the exercise of federal jurisdiction. Whether the state court can protect the rights of the federal litigants also weighs in favor of a stay, but to a lesser extent. Furthermore, the desire to avoid piecemeal litigation should also weigh in favor of a stay here, although the court concludes that the other factors can justify a stay on their own. The last relevant factor—which law provides the rule of decision—is a neutral factor here, as it clearly does not tip the scale back towards the exercise of federal jurisdiction.

**V.  CONCLUSION**

Based on the preceding discussion, Defendant's motion to stay at docket 15 is GRANTED. The parties are directed to inform the court when a resolution or final judgment is reached in the state court proceedings.

DATED this 28th day of July 2019.


                               /s/ JOHN W. SEDWICK
                  SENIOR JUDGE, UNITED STATES DISTRICT COURT