# UNITED STATES DISTRICT COURT

# DISTRICT OF ALASKA

MONIQUE R. SNEAD, Individually and as Personal Representative of the Estate of John H. Snead; JOHN G. SNEAD, Individually and as Trustee of the Snead Irrevocable Trust; MONIQUE R. SNEAD and JOHN G. SNEAD, both individually and as beneficiaries of the John H. Snead Revocable Trust and the Snead Irrevocable Trust,

    Plaintiffs,

    vs.

GUADALUPE C. WRIGHT; and MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED,

    Defendants.

3:19-CV-00092 JWS

ORDER AND OPINION

[Re: Motion at Doc. 37]

## I. MOTION PRESENTED

At docket 37 Defendant Merrill Lynch, Pierce, Fenner & Smith (Merrill Lynch) moves the court to reconsider its order at docket 34 that denied its request to compel arbitration. The court directed that the parties file a response and reply. Plaintiffs Monique R. Snead and John G. Snead, in their various capacities (collectively Plaintiffs or the Sneads), filed their response at docket 44. Merrill Lynch's reply is filed at docket 47.

## II. BACKGROUND

This federal action involves a dispute about two Merrill Lynch accounts opened by John H. Snead, the father of Plaintiffs, who died in August of 2017. Plaintiffs allege that Defendant Guadalupe Wright, who had been in a long-term relationship with John H. Snead up through his death and an employee of Merrill Lynch at that time, unlawfully transferred funds from John H. Snead's Merrill Lynch trust accounts—the John H. Snead Revocable Trust (Revocable Trust) and the Snead Irrevocable Trust (Irrevocable Trust). The Sneads allege that Merrill Lynch breached its fiduciary duty and was negligent regarding the trusts, that it is vicariously liable for Defendant Wright's actions, and that it was negligent in hiring, training, and supervising Wright. They also allege that Merrill Lynch violated AS 45.50.471, Alaska's Consumer Protection Act.

Merrill Lynch moved to compel arbitration, relying on two account forms John H. Snead signed wherein he agreed that any controversies between himself and Merrill Lynch would be arbitrated. Plaintiffs opposed the request for arbitration, arguing that they are not bound to arbitrate under agreements to which they were not a party. The court denied Merrill Lynch's request to compel arbitration. In doing so, the court stressed that the parties had cited a variety of different federal and state cases in support of their positions without conducting the requisite choice-of-law analysis. The court concluded that Alaska law would apply under the Restatement (Second) of Conflict of Laws despite the presence of a choice-of-law provision in the forms naming New York as the governing law because the record did not show any substantial connection between the parties or the transaction and New York. The court noted that there was no Alaska case addressing the issue of wether equitable estopped or some other contract principle could bind a non-signatory beneficiary to an arbitration agreement. Ultimately, however, the choice of law and its effect on whether Plaintiffs could be bound by the arbitration provisions was not determinative, as the court concluded that Merrill Lynch had not met its burden to show an agreement to arbitrate disputes related to the two accounts. The court found that the forms relied on by Merrill

Lynch did not provide enough information to demonstrate that they were linked to the two Snead trust accounts and that the accompanying declaration did not provide the needed clarification.

Merrill Lynch now moves for reconsideration, arguing that the court erroneously concluded that Alaska substantive law would apply to the issue of whether Plaintiffs are bound to arbitrate based on the forms John H. Snead signed. Merrill Lynch also attempts to fix the ambiguities surrounding the forms in order to adequately prove they are in fact related to the trust accounts at issue and therefore require arbitration of claims related to those accounts.

## III.  STANDARD OF REVIEW

Under the law of the case doctrine, a court is generally precluded from reconsidering an issue that has already been decided by the same court or a higher court in the same case.[1] However, as long as a district court retains jurisdiction over a case, it has inherent power to reconsider and modify an interlocutory order for sufficient cause.[2] That inherent power is not unfettered: "the court may reconsider previously decided questions in cases in which there has been an intervening change of controlling authority, new evidence has surfaced, or the previous disposition was clearly erroneous and would work a manifest injustice."[3]

## IV.  DISCUSSION

Merrill Lynch argues that reconsideration is proper because the court made a manifest error in determining that Alaska state law would apply to the issue of whether Plaintiffs, as nonsignatories, could be bound by John H. Snead's agreement to arbitrate.

---

[1]*Thomas v. Bible*, 983 F.2d 152,154 (9th Cir. 1993).

[2]*City of Los Angeles v. Santa Monica*, 254 F.3d 882, 885 (9th Cir. 2001).

[3]*Leslie Salt Co. v. United States*, 55 F.3d 1388, 1393 (9th Cir. 1995); *see also Sch. Dist. No. 1J, Multnomah Cnty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); LRCiv 7.3(h) ("A court will ordinarily deny a motion for reconsideration absent a showing of . . . (A) manifest error of the law or fact; (B) discovery of new material facts no previously available; or (C) intervening change in the law.").

After failing to conduct the necessary and obvious choice-of-law analysis in its initial briefing, Merrill Lynch now argues that it does in fact have a substantial connection to New York, and New York law should have been applied pursuant to Restatement (Second) Conflict of Law § 187.[4] While this argument is at first glance persuasive given that Merrill Lynch has identified an adequate connection to New York, it misses the basis for the court's rejection of arbitration. The court's ultimate conclusion was that regardless of the applicable substantive state law, Merrill Lynch failed to prove that the two forms John H. Snead signed were in fact connected to the two trust accounts at issue in Plaintiffs' complaint.[5]

The first form Merrill Lynch relied upon is a Cash Management Account Application and Agreement Form (CMA Form) signed in 1998 when the decedent opened a cash management account with Merrill Lynch. Merrill Lynch asserted that the account was opened for the Revocable Trust. The court noted that while the CMA Form directs the applicant to indicate whether the account was to be a trust account, John H. Snead did not fill out that section of the form. Moreover, he did not sign as a trustee or otherwise indicate on the form that he was opening the account for trust assets. The declaration provided in conjunction with the form did not adequately explain this ambiguity.[6]

---

[4] Section 187 applies in a contract action when the contract at issue includes a choice-of-law provision. It directs a court to apply the law of the state chosen by the parties unless "the chosen state has no substantial relationship to the parties or the transaction. . . ." Restatement (Second) of Conflict of Laws § 187 (1971).

[5] The court stated that there was no "case law from the Alaska Supreme Court directly on point," and it declined to make a prediction on whether the Alaska Supreme Court would follow *Comer* because "[e]ven if the applicable state law obligated beneficiaries or trustees to arbitrate under the circumstances the court cannot conclude that arbitration is warranted here based on the record provided." Doc. 34 at p. 8.

[6] The declaration merely labels the account associated with the CMA Form as the "Revocable Account," but nothing in the declaration or form itself provides verification that he opened the account in the name of the Revocable Trust.

The second form it relied upon is a Client Relationship Agreement (Client Agreement Form) that decedent signed in 2016. Merrill Lynch asserted that this agreement was signed when John H. Snead opened an account for the Irrevocable Trust. The court noticed, however, that while John H. Snead signed the form as a "trustee," he was signing as the trustee of the Revocable Trust, not the Irrevocable Trust.

In light of the court's order, Merrill Lynch now submits a new declaration that it believes clarifies any confusion about the accounts. The declaration affirms that the account associated with the CMA Form was not a trust account when established, but explains that it was converted to one in the name of the Revocable Trust about a year later. As for the Client Agreement Form, the new declaration states that the form was signed in connection with Account No. XXX-X5343 but that its prior declaration "inaccurately . . . referred to this account as the Snead Irrevocable Trust."[7] Instead, this account was another one opened in the name of the Revocable Trust.

A motion for reconsideration cannot be based upon evidence that was available at the time the original motion was filed.[8] The correct information about these forms and arguments as to how they bind the trusts should have been provided to the court at the outset. Therefore, the court concludes there is no basis on which to reconsider its prior ruling.

Moreover, this new material only further complicates the issue. In clarifying that the Client Agreement Form was signed in conjunction with another account for the Revocable Trust, and not the Irrevocable Trust, there is no basis provided for Merrill Lynch's position that John H. Snead agreed to arbitrate disagreements related to the

---

[7] Doc. 38 at pp. 2-3.

[8] *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (stating that a motion for reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation").

Irrevocable Trust account. Therefore, arbitration cannot be required for Plaintiffs' claims to the extent they allege misconduct related to the Irrevocable Trust.

As for the allegations related to the Revocable Trust, even if the newly submitted information about the Revocable Trust could be considered after the fact, the outcome on the issue of what law governs the issue remains the same. While the court may have erred in asserting that the parties did not have a substantial connection to New York to justify applying New York law as contemplated under the choice-of-law provisions in the two forms, the ultimate error in the court's analysis was considering the choice-of-law provision in the first instance. As argued by Plaintiffs in their response brief, the choice-of law provision contained in the forms cannot govern the underlying issue of whether they are bound to such forms in the first instance. [9] The choice-of-law provision therefore is not applicable to this threshold issue, and it was an error to apply §187 of the Restatement (Second) of Conflict of Laws. The choice-of-law rules for Plaintiffs' tort claims and contract claims[10] would conclude that Alaska's substantive law governs, given that Alaska has the most significant relationship to the parties and occurrence.[11]

---

[9] *See Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012) (noting that the choice of law provision "does not determine the law that the Court should apply to determine whether the arbitration clause was part of any agreement between the parties unless and until it is determined that the parties have agreed to and are bound by it"); *Trans-Tec Asia v. M/V Harmony Container*, 518 F.3d 1120, 1124 (9th Cir. 2008) ("[W]e cannot rely on the choice of law provision until we have decided, as a matter of law, that such a provision was a valid contractual term and was legitimately incorporated into the parties' contract.");

[10] In addition to their Alaska consumer protection act claim, Plaintiffs raise negligence claims against Merrill Lynch and breach of fiduciary duty claims, which can be considered contract, tort, or hybrid claims depending on the source of the duty. *See Shields v. Cape Fox Corp.*, 42 P.3d 1083, 1089-90 (Alaska 2002).

[11] *See* Restatement (Second) Conflict of Laws §§ 188, 145.

## V. CONCLUSION

Based on the preceding discussion, Defendant's motion for reconsideration at docket 37 is DENIED.

DATED this 17th day of October 2019.


/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT