IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MONIQUE R. SNEAD, Individually, and as Personal Representative of the Estate of John H. Snead; *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> GUADALUPE C. WRIGHT; *et al.*, <br><br> Defendants. | Case No. 3:19-cv-00092-JWS <br> 3:19-cv-00209-JWS <br> CONSOLIDATED <br><br> **ORDER** |

## I. MOTION PRESENTED

At docket 136, Defendant Guadalupe C. Wright ("Wright") filed a motion to exclude the proposed expert testimony of Sheila Shinn, an expert on issues relating to diminished capacity and undue influence put forth by Plaintiffs Monique R. Snead and John G. Snead ("Plaintiffs"). Plaintiffs filed an opposition at docket 140. Wright filed a reply at docket 146. Oral argument would not be of assistance to the court.

## II. BACKGROUND

This federal action involves a dispute related to certain Merrill Lynch accounts held by John H. Snead ("Snead"), the father of Plaintiffs, who died in August 2017. Plaintiffs allege that Wright, who had been in a long-term relationship with Snead up through his death and an employee of Merrill Lynch, "exerted undue

influence, wrongfully facilitated, and/or otherwise deceived John H. Snead" in order to obtain funds from Snead's trust accounts and make herself the beneficiary of his annuity. Their claims against her include conversion, fraud, and malpractice. Wright moves to exclude all testimony from Sheila Shinn ("Shinn"), who proposes to offer an opinion as to Snead's diminished capacity and Wright's use of undue influence to secure his assets. Wright argues that Shinn is not qualified to render an expert opinion on diminished capacity, and her expert report and deposition testimony "are rife with inflammatory allegations, wild speculation and adversarial opinions" and therefore unreliable for purposes of Rule 702 of the Federal Rules of Civil Procedure or otherwise excludable as unhelpful, misleading, and likely to cause juror confusion and undue prejudice against her.[1]

### III. LEGAL STANDARDS

Federal Rule of Evidence 702 permits a witness qualified by "knowledge, skill, experience, training, or education" to offer expert testimony where: (1) the testimony will help the trier of fact understand the evidence or determine a fact in issue; (2) the testimony is based on sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the expert has reliably applied the principles and methods to the facts of the case.[2] This rule helps the court perform its mandatory gatekeeping function to "assure that the expert testimony 'both rests on a

---

[1] Docket 136-1 at 3–5.
[2] Fed. R. Evid. 702.

reliable foundation and is relevant to the task at hand.'"[3]  "[T]estimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry."[4] Testimony is reliable if it is rooted in the "knowledge and experience of the relevant discipline."[5]  The court's role in analyzing reliability "is to analyze not what the experts say, but what basis they have for saying it."[6]  That is, reliability is not to be conflated with credibility.  "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion."[7]

   The court must act as gatekeeper for both scientific and non-scientific expert testimony, although it has flexibility in structuring how it determines whether expert testimony is reliable and relevant.[8]  For non-scientific expert opinions, reliability often cannot be measured by examining the supporting theories and methodologies, including issues of testing, error rates, and peer review publication.[9] A court may or may not consider any specific reliability factor depending on the type of expertise and particular subject of the testimony.[10]  Indeed, a court can find non-scientific testimony reliable based merely on the knowledge and experience of the

---

[3] *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)).
[4] *Id.* at 565 (quoting *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006)).
[5] *Id.*
[6] *Wendell v. GlaxcoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995)).
[7] *Primiano*, 598 F.3d at 564.
[8] *United States v. Valencia-Lopez*, 971 F.3d 891, 898 (9th Cir. 2020).
[9] *Primiano*, 598 F.3d at 564; *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004).
[10] *Primiano*, 598 F.3d at 564 ("[T]he trial court has discretion to decide how to test an expert's reliability as well as whether the testimony is reliable, based on 'the particular circumstances of the particular case.'" (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999))).

*Snead et al. v. Wright, et al.* Case No. 3:19-cv-00092-JWS
Order Page 3
Case 3:19-cv-00092-JWS Document 153 Filed 09/19/22 Page 3 of 11

expert.[11] Exclusion of expert testimony should be "the exception rather than the rule."[12]

### IV. DISCUSSION

#### A. Capacity

Plaintiffs retained Shinn as an expert in gerontology, which includes the social issues surrounding aging, and had her analyze Snead's mental capacity around the time of his death.[13] In her report, Shinn concludes that Snead "experienced diminished capacity given the severity of his ailments, specifically heart failure."[14] She describes his condition as "vascular dementia."[15] Wright argues that Shinn is not qualified to put forth an opinion on Snead's mental capacity, particularly given that her opinion is based only on review of his medical records and medical literature linking heart failure to cognitive impairment, with no direct evaluation of Snead himself.

Shinn has over twenty years of experience working in the field of gerontology—which studies aging from a social perspective rather than a physical perspective—with a master's degree in the topic as well as a master's in public health. She has been a certified dementia practitioner since 2017, with recent experience as a contractor with the State of Alaska Office of Public Advocacy and the Alaska Court System in the role of court visitor on matters related to guardianship and

---

[11] *Hangarter*, 373 F.3d at 1017.
[12] Fed. R. Evid. 702 advisory committee's note to 2000 amendment.
[13] Docket 136-2 at 3; Docket 136-3 at 3.
[14] Docket 136-2 at 7.
[15] *Id.* at 8.

*Snead et al. v. Wright, et al.*
Order
Case No. 3:19-cv-00092-JWS
Page 4
Case 3:19-cv-00092-JWS   Document 153   Filed 09/19/22   Page 4 of 11

conservatorship. She testified that as a certified dementia practitioner she is trained to recognize diminished capacity in the elderly and that she works closely with people who "have had some kind of cognitive impairment."[16] She has a long history of teaching and developing programs on issues related to elder care and elder fraud.

Despite her experience and training on issues related to aging, elder care, and elder abuse, the court agrees with Wright that Shinn's testimony about Snead's metal capacity should be excluded under Rule 702 as outside her expertise or otherwise not helpful to the jury. Shinn acknowledged in her deposition that Snead's medical records did not mention any mental status exams or cognitive assessments that suggested dementia or diminished mental capacity.[17] Unlike her experience in state court where she conducts in-person assessments and investigations of the person who is the subject of the guardianship or conservatorship, she was not able to make any in-person assessment of Snead.[18] She instead relied on Snead's medical records that showed he suffered from heart failure, along with other comorbidities, and that he reported grogginess and some confusion. Then based on medical literature linking heart failure to vascular dementia she concluded Snead had diminished mental capacity at the time of his death.[19] While Shinn has expertise in the field of aging, including working with people suffering from dementia and being able to recognize the signs of dementia or diminished capacity, her experience and training does not sufficiently

---

[16] Docket 136-3 at 61.
[17] *Id.* at 33.
[18] *Id.* at 67.
[19] Docket 136-2 at 7–8.

*Snead et al. v. Wright, et al.*     Case No. 3:19-cv-00092-JWS
Order     Page 5
Case 3:19-cv-00092-JWS   Document 153   Filed 09/19/22   Page 5 of 11

extend to diagnosing such conditions based upon medical records and reviewing medical literature.

Moreover, her opinion will be of little assistance to the jury on this issue. As acknowledged in her deposition testimony, her opinion is not necessarily based on specialized knowledge: "I'm not a medical doctor, but I can read . . . and can understand medical records."[20] She admitted that, unlike her usual work, here she was "really relying on hearsay and medical records to determine his state of mind."[21] She could not say Snead was "incapacitated." Rather, she could only confidently say that based on his medical conditions he did not have "a hundred percent full brain capacity."[22] This is not an opinion formed from specialized knowledge that would be of assistance to the jury on the issue of Snead's capacity.[23] Indeed, Plaintiffs have a medical expert, Gregory T. Whitman, MD, to testify about Snead's health conditions and how they would have affected his capacity to understand certain events taking place in the time preceding his death.[24] Consequently, the issue of capacity is a fact to be determined by the jurors following Plaintiffs' presentation of evidence and other expert testimony, and Shinn's opinion would not add any specialized information to that determination.

---

[20] Docket 136-3 at 32.
[21] *Id.* at 67.
[22] *Id.*
[23] *Mukhtar v. Cal. State Univ., Hayward,* 299 F.3d 1053, 1065 n.9 (9th Cir. 2002) (noting that to be admissible as helpful to the jury, the expert must provide testimony about an issue that is "beyond the common knowledge of the average layman" (quoting *United States v. Vallejo,* 237 F.3d 1008, 1019 (9th Cir.), *amended by* 246 F.3d 1150 (9th Cir. 2001))).
[24] Docket 140-1.

## B. Undue Influence

Wright asserts that Shinn's expert testimony regarding the undue influence Wright exerted on Snead should be excluded in full as unreliable. She argues that Shinn's opinions as articulated in her report and in her deposition testimony are based upon speculation and inferences not supported in the record. She asserts that Shinn improperly comments on Wright's credibility and motives, which invades the province of the jury, and otherwise makes conclusions on areas outside her expertise in a manner that would be prejudicial to Wright and confusing to the jury.

After due consideration of Wright's argument and Shinn's report and deposition, the court cannot deem her opinions entirely unreliable to the extent that she should be outright prohibited from testifying under Rule 702. Shinn has a sufficient foundation of knowledge and experience to serve as an expert on undue influence over the elderly. As noted in her report, she is knowledgeable about what undue influence is and how to identify when it is occurring or at risk of occurring. She also is knowledgeable as to the methods used by experts in the field of gerontology to look for manipulation of the elderly:

> For purposes of this report, I am using the IDEAL protocol developed by Dr. Bennett Blum and the Bernatz SCAM Model. The IDEAL protocol combines knowledge from the fields of psychiatry, psychology, and sociology regarding the mechanism of human manipulation. Factors in the IDEAL protocol are Isolation, Dependency, Emotional Manipulation, and/or Exploitations of a vulnerability; Acquiescence; and Loss. The SCAM model, developed by Susan I. Bernatz, PhD., builds upon the IDEAL protocol but includes factors that contribute to susceptibility. Elements of the SCAM model include

> Susceptibility, Confidential [R]elationship, Active Procurement, and Monetary Loss. . . . Common signs of vulnerability include but are not limited to being physically disabled, experiencing comorbidities, dependency on a caregiver for all activities of daily living, lacking mobility and no longer driving, and being homebound and/or socially isolated.[25]

Given the models cited, her opinion on whether Wright exerted undue influence on Snead before his death is based upon accepted methods in the field. She applied these models to the facts as presented to her through discovery. Her testimony related to the field of elder care and undue influence is specialized knowledge that will assist the trier of fact. Consequently, Shinn's testimony about how undue influence is identified in the field of gerontology and what facts in this case suggest undue influence was occurring is admissible expert testimony under Rule 702.

Wright points to various opinions and conclusions in the report that she asserts are based on speculation and a selective version of the facts presented in discovery. She argues that the report is rife with such conclusions and therefore should be deemed unreliable. The fact that Shinn's testimony may be susceptible to impeachment based on erroneous facts or incomplete consideration of the evidence does not require wholesale exclusion of Shinn as an expert at trial. Questions or disagreements about the facts supporting her opinion reflect on credibility, not admissibility.[26] The court cannot conclude that her opinions are wholly speculative.

---

[25] Docket 136-2 at 9.
[26] *Elosu v. Middle Fork Ranch Inc.*, 26 F.4th 1017, 1023–24 (9th Cir. 2022).

*Snead et al. v. Wright, et al.*  Case No. 3:19-cv-00092-JWS
Order  Page 8
Case 3:19-cv-00092-JWS   Document 153   Filed 09/19/22   Page 8 of 11

The court's rejection of Wright's request to outright exclude Shinn from testifying should not be read as a finding that her entire report is above reproach. Plaintiffs may not introduce Shinn for the purpose of reinforcing their factual narrative or providing a synopsis of their evidence for the jury.[27] Her testimony must be provided in the context of how experts in her field of gerontology look for undue influence. Moreover, Plaintiffs' counsel should caution Shinn against offering her opinion about other witnesses' credibility. For example, in her report Shinn concludes that Wright was lying about when her relationship with Snead began and about the fact that she did not have a romantic relationship with Chris Olsen, the man who was negotiating to purchase Snead's business and who was made Snead's power of attorney and health care agent shortly before Snead's death. This type of opinion is improper: "An expert witness is not permitted to testify specifically to a witness' credibility."[28] Determining witness credibility is an exclusive function of the jury.[29] That does not mean, however, that she is foreclosed from offering her opinion based on a set of facts she assumes to be credible or evidence that conflicts with Wright's testimony.[30] She simply cannot offer an opinion or make a comment to the jury regarding Wright's truthfulness.

---

[27] *Johns v. Bayer Corp.*, No. 09-cv-1935, 2013 WL 1498965, at *28 (S.D. Cal. Apr. 10, 2013).
[28] *Reed v. Lieurance*, 863 F.3d 1196, 1209 (9th Cir. 2017) (quoting *Unites States v. Candoli*, 870 F.2d 496, 506 (9th Cir. 1989)).
[29] *United States v. Ramirez-Rodriquez*, 552 F.2d 883, 884 (9th Cir. 1977); *Candoli*, 870 F.2d at 506.
[30] *See Reed*, 863 F.3d at 1209; *see also Ellis v. Navarro*, No. C-07-5126-SBA, 2012 WL 3580284, at * 6 (N.D. Cal. Aug. 17, 2012).

*Snead et al. v. Wright, et al.*  
Order  
Case No. 3:19-cv-00092-JWS  
Page 9  
Case 3:19-cv-00092-JWS   Document 153   Filed 09/19/22   Page 9 of 11

Additionally, Shinn must be instructed to refrain from giving any testimony that speculates as to motive or intent.[31] For example, in her report where she discusses the presence of manipulation, she references an email between Wright and Chris Olsen wherein Wright mentions that an attorney for the Snead family questioned whether Wright was being manipulative.[32] Shinn discusses the content of the email and then goes further to conclude that Wright was "over-explaining" herself to perhaps cover up that she had been eavesdropping.[33] Such a statement is speculative as to Wright's motive and state of mind. Testimony of this nature is not appropriate expert testimony and will be subject to objection and exclusion at trial.

To the extent Wright requests that this court parse through Shinn's report and identify other statements that improperly speculate as to motive and intent, the court declines to do so. Her "report is not evidence and, because the objectionable character of some of [her] statements may simply be due to injudicious phrasing, a pre-trial ruling on the admissibility of [her] testimony is premature."[34] "There is nothing prejudicial to a party in reserving a ruling on the admission of opinions and conclusions of an expert until offered at trial when all of the necessary foundation must be proved

---

[31] *See, e.g., Siring v. Oregon State Bd. of Higher Educ. ex rel. E. Oregon Univ.,* 927 F. Supp. 2d 1069, 1077–78 (D. Oregon 2013).
[32] Docket 136-2 at 15.
[33] *Id.*
[34] *Madrigal v. Allstate Indem. Co.*, CV-14-4242-SS, 2015 WL 12746232, at *5 (C.D. Cal. Oct. 29, 2015).

and the adequacy of the showing made will be determined before questions asking for opinions and conclusions will be permitted."[35]

## V. CONCLUSION

Based on the preceding discussion, Wright's motion to exclude the proposed expert testimony of Sheila Shinn at docket 136 is GRANTED IN PART AND DENIED IN PART. For the reasons discussed above, the court prohibits Sheila Shinn from offering her expert opinion as to John H. Snead's diminished capacity. She may, however, testify as an expert on the subject of undue influence and its application to this case. Nothing in this order should be deemed a ruling on the admissibility of any specific statement contained in her report, and the court reserves the right to exclude her testimony in the course of trial that exceeds the proper scope of her expertise or is shown to be irrelevant or otherwise inadmissible based on the evidence as presented at trial.

IT IS SO ORDERED this 19th day of September, 2022, at Anchorage, Alaska.

                                                                            */s/ John W. Sedwick*
                                                                                JOHN W. SEDWICK
                                                            Senior United States District Judge

---

[35] *Morford v. Wal-Mart Stores, Inc.*, 2:09-cv-02251-RLH, 2011 WL 2313648, at *8 (D. Nev. June 9, 2011) (citing *United States v. Alatorre*, 222 F.3d 1098, 1103 (9th Cir. 2000)).

*Snead et al. v. Wright, et al.*              Case No. 3:19-cv-00092-JWS
Order                                                                                                  Page 11
Case 3:19-cv-00092-JWS   Document 153   Filed 09/19/22   Page 11 of 11