IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

MONIQUE R. SNEAD, individually,
and as Personal Representative of the
Estate of John H. Snead; JOHN G.
SNEAD, individually and as Trustee of
the Snead Irrevocable Trust; and
MONIQUE R. SNEAD and JOHN G.
SNEAD, individually and as
beneficiaries of the John H. Snead
Revocable Trust and the Snead
Revocable Trust, and KAREN S.
SNEAD,

                    Plaintiffs,

     vs.

GUADALUPE C. WRIGHT; and
MERRILL LYNCH, PIERCE,
FINNER & SMITH,
INCORPORATED, a Delaware
corporation doing business in the State
of Alaska,

                    Defendants.

Case Nos. 3:19-cv-00092-JMK
3:19-cv-00209-JMK
(Consolidated)


**ORDER REGARDING
PENDING MOTIONS**

Pending before the Court are two motions for summary judgment. At

Docket 172, Defendant Guadalupe C. Wright moves for partial summary judgment

dismissing certain claims asserted in the amended complaints in these two consolidated

matters. At Docket 173, Defendant Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill Lynch") moves for summary judgment dismissing the claims alleged against it. Both motions are fully briefed. The Court determined that oral argument on Ms. Wright's *Motion for Partial Summary Judgment* was unnecessary and took the motion under advisement without argument. The Court took Merrill Lynch's *Motion for Summary Judgment* under advisement following oral argument on April 23, 2024.

For the following reasons, the *Motion for Partial Summary Judgment* at Docket 172 is **GRANTED IN PART AND DENIED IN PART** and the *Motion for Summary Judgment* at Docket 173 is **GRANTED**.

## I. BACKGROUND

The following facts are undisputed unless otherwise noted. The two consolidated actions before the Court relate to actions grantor John H. Snead ("Mr. Snead") took with respect to two trusts shortly before his death in 2017: a $358,000 wire transfer from the John H. Snead Revocable Trust to a joint account maintained by Mr. Snead and Ms. Wright, and the execution of a change-of-beneficiary form.

### A. Mr. Snead Established Trusts and Executed a Will

At the time of Mr. Snead's death, his estate included interests in two businesses—Airland Transport, Inc., and J&H Land—as well as trust assets.[1]

On December 23, 1998, Mr. Snead established the John H. Snead Revocable Trust and, as sole trustee, maintained two accounts with Merrill Lynch's Anchorage,

---

[1] Docket 172-8 at 2.

Alaska office.[2]  Mr. Snead opened the first account ("the 7695 Account") on January 1, 1998, as an individual account and converted the account to a trust account in the name of the Revocable Trust on December 31, 1999.[3]  Mr. Snead opened the second account ("the 5343 Account") as a trust account on August 22, 2016.[4]  The 7695 Account held an annuity that Mr. Snead purchased from Transamerica Life Insurance Company in 2003, while the 5343 Account held investments managed by Merrill Lynch's advisors.[5]  Michael Murphy, a Merrill Lynch financial advisor at its branch office in Anchorage, was responsible for the Revocable Trust at the time of the transactions at issue here.[6]  Mr. Snead also allegedly established the John H. Snead Irrevocable Trust ("the Irrevocable Trust").[7]  But Merrill Lynch did not maintain any account on the behalf of the Irrevocable Trust.[8]

Mr. Snead had two children from his marriage to Plaintiff Karen Snead: John G. Snead, adopted by Mr. Snead after marrying Karen Snead, and Monique Snead.[9] Karen Snead and Mr. Snead divorced in October 2005.[10]

---

[2] Docket 174-3; Docket 175 at 2.
[3] Docket 175 at 2; *see also* Docket 174-1.
[4] Docket 175 at 2; *see also* Docket 174-4 (opening the 5343 Account); Docket 174-5 (converting the 5343 Account to a trust account).
[5] Docket 175 at 3.
[6] *Id.* at 2.
[7] N.B.  Although Plaintiffs allege that the Irrevocable Trust exists, to the Court's knowledge, the record does not substantiate such a trust exists or identify an institution where trust accounts are held.
[8] Docket 175 at 3.
[9] Docket 172-18 at 34; Docket 172-3 at 2.
[10] *See Snead v. Snead*, No. 3AN-04-05460CI.

*Snead, et al. v. Wright, et al.*
Order Regarding Pending Motions
Case Nos. 3:19-cv-00092-JMK; 3:19-cv-00209-JMK
Page 3

Case 3:19-cv-00092-JMK   Document 206   Filed 05/28/24   Page 3 of 27

Mr. Snead and Ms. Wright met in December 2005 and began dating shortly thereafter.[11]  In December 2006, Ms. Wright moved into Mr. Snead's home.[12]  Except for two periods of separation in November 2006 and February 2014, the two lived together in Mr. Snead's home until his death.[13]  Between July 2000 and August 2017, Ms. Wright worked for the Jay/Kibler group of Advisers at Merrill Lynch.[14]  Ms. Wright never worked with Mr. Murphy or the group of advisors responsible for Mr. Snead's accounts, and did not provide account-related services for Mr. Snead.[15]  Ms. Wright had access only to the accounts of the clients of the financial advisor for whom she worked.[16]

In 2014, Mr. Snead executed a will, in which he left his estate to his children, John Snead and Monique Snead (then Galosich).[17]  In 2016, Mr. Snead requested that his attorney, Peter Brautigam, modify his 2014 will and bequest his residence at 2300 Leopard Circle to Ms. Wright, instead of his children.[18]  In January 2017, Mr. Snead also called Mr. Brautigam and asked him to prepare an Alaska transfer on death deed ("TODD").[19]  On January 3, 2017, Mr. Brautigam sent Mr. Snead a draft of his will, amended according to his request.[20]  Ultimately, on February 7, 2017, Mr. Snead executed the TODD, which would transfer his residence at Leopard Circle to Ms. Wright upon his death, but decided

---

[11] Docket 172-10 at 1.
[12] Id.
[13] Docket 172-5 at 19; Docket 172-10 at 1.
[14] Docket 172-5 at 2; Docket 184-7 (SEALED) at 4.
[15] Docket 175 at 5–6.
[16] Docket 174-6 at 8; Docket 174-7 at 15; Docket 175 at 5–6.
[17] Docket 172-18 at 34–101.
[18] Id. at 129.
[19] Docket 172-11 at 1.
[20] Docket 172-18 at 125–128.

*Snead, et al. v. Wright, et al.*
Order Regarding Pending Motions
Case Nos. 3:19-cv-00092-JMK; 3:19-cv-00209-JMK
Page 4

Case 3:19-cv-00092-JMK   Document 206   Filed 05/28/24   Page 4 of 27

not to sign the amended will.[21]  Mr. Snead signed the TODD in his truck in the parking lot

of Mr. Brautigam's office.[22]  Mr. Brautigam observed Mr. Snead, who was alone, sign the

document and notarized his signature.[23]  Later, Mr. Brautigam noted that he believed

Mr. Snead understood what he was doing by signing the TODD and did so freely.[24]  A few

months later, in April 2017, Mr. Snead and Ms. Wright opened a joint bank account at

Northrim Bank and added Ms. Wright to Mr. Snead's preexisting account at AlaskaUSA.[25]

Ms. Wright had made Mr. Snead a joint accountholder on her account at AlaskaUSA in

2015.[26]  Around the same time, on April 4, 2017, Mr. Snead contacted Mr. Murphy at

Merrill Lynch and asked that his daughter, Monique, be removed from his accounts.[27]

## B.    In 2017, Mr. Snead Passed Away Following a Months-Long Period of Ill Health

In his later years, Mr. Snead experienced a number of health issues.  He

suffered a stroke in 1999 or 2000; was diagnosed with a heart condition that required the

placement of a pacemaker in 2003; and suffered from diabetes, neuropathy in certain joints,

arthritis, eye disease that impaired his vision, among other conditions.[28]  In 2016 and 2017,

Mr. Snead's health further deteriorated.  In 2016, he chose to stop driving.[29]  In 2017,

Mr. Snead began to work half days at the Airland office.[30]  He continued to work until

---

[21] *Id.* at 132; Docket 172-11 at 1–2.
[22] Docket 172-11 at 2.
[23] *Id.*
[24] *Id.*; Docket 172-18 at 132.
[25] Docket 172-5 at 14; Docket 172-18 at 118–21.
[26] Docket 172-5 at 14.
[27] Docket 172-17 at 26.
[28] Docket 172-2 at 4, 11, 14; Docket 172-5.
[29] Docket 172-5 at 12.
[30] Docket 172-6 at 9.

approximately two months before his death.[31] And, although Mr. Snead's health declined during this period, his colleagues judged that he remained intellectually able and continued to be involved in the operation of Airland and its financials.[32]

In 2017, Mr. Snead's health began to suffer further. In January, Mr. Snead visited the hospital on four occasions due to a malfunctioning pacemaker.[33] Then, in early June 2017, Mr. Snead was hospitalized in Providence Alaska Medical Center because he suffered bouts of tachycardia that caused his pacemaker to fire.[34] He was admitted to the emergency room or hospitalized again at least four times due to the same issues: tachycardia and his pacemaker repeatedly firing.[35] On August 6, 2017, Mr. Snead visited the Providence emergency room twice—first, in the morning, for a catheter issue, and second, in the evening, when his pacemaker fired.[36] After Mr. Snead arrived in the emergency room in the evening, hospital staff intubated him.[37] Mr. Snead went into cardiac arrest, and, despite attempts to resuscitate him, died just after midnight on August 7, 2017.[38]

## C.  Prior to His Death, Mr. Snead Wired Funds from a Trust Account and Changed the Named Beneficiary of an Annuity Held in His Trust Accounts

In the several months prior to his death, Mr. Snead made transactions with respect to the trust accounts at issue in this action. In May 2017, Mr. Snead and Ms. Wright

---

[31] Docket 172-7 at 4.
[32] Docket 172-6 at 7–9.
[33] Docket 172-5 at 20.
[34] Docket 172-18 at 2.
[35] *Id.* at 2–17.
[36] *Id.* at 26–29.
[37] *Id.* at 30–33.
[38] *Id.* at 31–33.

decided to move to Tucson, Arizona.[39] They agreed to purchase property in Tucson, together with a home that was to be built on the property.[40] On May 9, 2017, and on June 21, 2017, Mr. Snead instructed Merrill Lynch to transfer funds totaling $15,460 from the Revocable Trust to Richmond American Homes of Arizona to be used as earnest money related to the home purchase.[41] On June 16th, Mr. Snead spoke with Mr. Murphy at Merrill Lynch about his plans to purchase the Tucson home and informed him that he planned to liquidate assets in the 5343 Account to fund his purchase and raise $50,000 immediately, and $300,000 later.[42] Furthermore, he specifically indicated that he did not wish to have a mortgage to finance the purchase but wanted to pay for the property in full.[43] Merrill Lynch duly sold $50,000 worth of securities in the 5343 Account and transferred the proceeds.[44]

On July 25, 2017, while Mr. Snead was hospitalized at Providence, Mr. Murphy conducted a telephonic review of the Trust Accounts with Mr. Snead.[45] In the course of this discussion, Mr. Snead asked who was the named beneficiary on the Transamerica Annuity held in the 7695 Account.[46] Mr. Murphy responded that Mr. Snead's ex-wife, Karen Snead, was listed as the beneficiary and noted that Mr. Snead appeared surprised that this was the case.[47] On July 31, 2017, Ms. Wright emailed Marlaina

---

[39] Docket 172-5 at 13.
[40] Docket 172-16 (purchase agreement); Docket 172-17 at 2–13 (amendment to purchase agreement).
[41] Docket 172-17 at 20–21.
[42] Docket 175 at 4.
[43] *Id.*
[44] *Id.*
[45] *Id.* at 5.
[46] *Id.*
[47] *Id.*

Haretuku, a Merrill Lynch client associate working with Mr. Murphy, to request that she send a blank Change of Beneficiary Form to Mr. Snead's Airland email address.[48] The next day, on August 1, 2017, Ms. Haretuku emailed a blank Change of Beneficiary Form to Mr. Snead's Airland email as requested.[49] The same day, Ms. Wright, at the direction of Mr. Snead, retrieved a document from Mr. Snead's locked cabinet at the Airland office and printed a copy of the Change of Beneficiary Form.[50] When Ms. Wright brought the documents home, Chris Olsen, an Airland employee and Mr. Snead's power of attorney, was visiting Mr. Snead.[51] Mr. Olsen filled out the Change of Beneficiary Form as instructed by Mr. Snead and Mr. Snead signed the form using a stamp with his signature.[52] Later, Olivia Dekreon, a Merrill Lynch client associate who worked with Mr. Murphy and was a friend of Mr. Snead and Ms. Wright's, visited Mr. Snead and Ms. Wright at their home on the evening of August 1st.[53] When Ms. Dekreon was leaving, Mr. Snead handed her a sealed envelope containing the completed Change of Beneficiary Form and asked her to take the envelope to Mr. Murphy at Merrill Lynch.[54] Ms. Dekreon then delivered the envelope to Ms. Haretuku later that day.[55] Another Merrill Lynch employee, Tara Buchholdt, applied a medallion signature guarantee to the form and Ms. Haretuku faxed

---

[48] Docket 172-17 at 1.
[49] *Id.* at 25; Docket 175 at 5.
[50] Docket 172-5 at 7–8.
[51] *Id.* at 9.
[52] *Id.*; Docket 172-6 at 4.
[53] Docket 172-5 at 11.
[54] *Id.* at 10.
[55] Docket 172-9 at 4.

the form to Transamerica on August 4, 2017.[56]  Following Mr. Snead's death, Ms. Wright allegedly made a claim on the Annuity.[57]

Separately, on July 31, 2017, while Mr. Snead was hospitalized, he called Merrill Lynch and directed them to liquidate the assets in the 5343 Account and transfer those funds to Mr. Snead and Ms. Wright's joint account at AlaskaUSA Federal Credit Union.[58]  Ms. Wright was on the line with Mr. Snead during this call to "assist[] with information and [Mr. Snead's] instructions."[59]  However, Mr. Snead confirmed that Merrill Lynch was authorized to transfer funds without her assistance or participation.[60]  In total, Merrill Lynch wired $358,000 to the joint account to finance the home purchase.[61]

## D.    This Litigation Ensued

In the two complaints in this consolidated case, Plaintiffs asserted numerous claims against Defendant Merrill Lynch.[62]  Remaining are Monique Snead's claims for (1) breach of fiduciary duty as to the John H. Snead Irrevocable Trust; (2) negligence as to the John H. Snead Revocable Trust; (3) vicarious liability; (4) violation of Alaska Stat. § 45.50.471; (5) breach of fiduciary duty as to the John H. Snead Revocable Trust; (6) negligent hiring, training, and/or supervision; and (6) fraud, as well as Karen Snead's claims for (7) breach of the covenant of good faith and fair dealing and (8) negligence and

---

[56] Docket 175 at 5.
[57] Docket 103 at 7, *Snead et al. v. Wright et al.*, Case No. 3:19-cv-00209.
[58] Docket 175 at 4; Docket 172-17 at 23–26.
[59] Docket 175-1 at 4.
[60] Docket 192-4 (SEALED).
[61] Docket 175 at 4.
[62] *See* Docket 33-1; *see also* Docket 103, *Snead et al. v. Wright et al.*, Case No. 3:19-cv-00209.

breach of fiduciary duty.[63]  With respect to Ms. Wright, in one complaint Plaintiffs assert claims for (1) wrongful removal of assets/undue influence; (2) conversion; (3) fraud by nondisclosure; (4) fraudulent use of Merrill Lynch's Signature Stamp; (4) fraudulent procurement of a signature; and (5) professional malpractice.[64]  In a second complaint Plaintiffs assert additional claims.[65]  Following the Court's order on a motion to dismiss, claims for (1) fraud; (2) conversion; (3) intentional interference with contract; and (4) undue influence against Ms. Wright remain.[66]

## II.  LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[67]  A material fact is one that "might affect the outcome of the suit under the governing law."[68]  "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[69]

The party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact.[70]  To establish that a fact cannot be genuinely disputed, the movant can either cite the record or show "that the materials cited

---

[63] Docket 33-1 at 5–13; Docket 103 at 9–22, *Snead et al. v. Wright et al.*, Case No. 3:19-cv-00209; Docket 146, *Snead et al. v. Wright et al.*, 3:19-cv-00209.

[64] Docket 33-1 at 7–13.

[65] *See* Docket 103, *Snead et al. v. Wright et al.*, Case No. 3:19-cv-00209.

[66] *See* Docket 146, *Snead et al. v. Wright et al.*, Case No. 3:19-cv-00209.

[67] Fed. R. Civ. P. 56(a).

[68] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

[69] *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.,* 618 F.3d 1025, 1031 (9th Cir. 2010).

[70] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

*Snead, et al. v. Wright, et al.*
Order Regarding Pending Motions
Case Nos. 3:19-cv-00092-JMK; 3:19-cv-00209-JMK
Page 10

Case 3:19-cv-00092-JMK   Document 206   Filed 05/28/24   Page 10 of 27

do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."[71]

Once the movant has made such a showing, the non-movant "bears the burden of production under [FRCP] 56 to 'designate specific facts showing that there is a genuine issue for trial.'"[72] The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."[73] A party cannot "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements."[74] Ultimately, in ruling on a motion for summary judgment, the court must view the facts and draw all reasonable inferences in the light most favorable to the non-moving party.[75]

## III.   DISCUSSION

### A.   Ms. Wright's *Motion for Partial Summary Judgment*

Ms. Wright moves for partial summary on the claims of professional malpractice, conversion, fraud by nondisclosure, fraudulent use of Merrill Lynch's Signature Stamp, and fraudulent procurement of Mr. Snead's signature. As explained below, Ms. Wright's motion is **GRANTED IN PART AND DENIED IN PART**.

---

[71]   Fed. R. Civ. P. 56(c)(1).

[72]   *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Celotex Corp. v. Catrett*, 477 U.S. at 324).

[73]   *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (internal citation omitted); *see also Liberty Lobby*, 477 U.S. at 252 (specifying that the non-movant must show more than "[t]he mere existence of a scintilla of evidence"); *accord In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).

[74]   *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

[75]   *Scott v. Harris*, 550 U.S. 372, 378 (2007).

*Snead, et al. v. Wright, et al.*                    Case Nos. 3:19-cv-00092-JMK; 3:19-cv-00209-JMK
Order Regarding Pending Motions                    Page 11

Case 3:19-cv-00092-JMK   Document 206   Filed 05/28/24   Page 11 of 27

**(1) Summary judgment is warranted with respect to Plaintiffs' professional malpractice claim**

Ms. Wright argues that summary judgment on the claim of professional malpractice must be granted because she did not have a professional relationship with Mr. Snead and her position as a Merrill Lynch employee did not create a fiduciary or other professional duty to Mr. Snead or the Revocable Trust.[76]  Plaintiffs respond that Ms. Wright owed Mr. Snead a reasonable duty of care with respect to his accounts at Merrill Lynch whether or not she was a fiduciary to Mr. Snead.[77]  Additionally, Plaintiffs insist that the proper inquiry is whether Ms. Wright rendered services to Mr. Snead and argue that she did so by delivering documents, assisting Mr. Snead in communicating with Merrill Lynch, and requesting forms on his behalf.[78]

To prove a professional malpractice or professional negligence claim, a plaintiff must prove duty, breach, causation, and damages.[79]  A professional has the heightened duty to "use such skill, prudence, and diligence as other members of the profession commonly possess and exercise."[80]  This duty applies when one undertakes to render professional services, whether there exists an enforceable contract or the services are rendered gratuitously.[81]

---

[76] Docket 172-1 at 23–25.
[77] Docket 184 (SEALED) at 28–32.
[78] *Id.*
[79] *Park v. Spayd*, 509 P.3d 1014, 1019 (Alaska 2022).
[80] *Linck v. Barokas & Martin*, 667 P.2d 171, 173 n.4 (Alaska 1983); *see also* Restatement (Second) of Torts § 299A (1965) ("[O]ne who undertakes to render services in the practice of a profession or trade is required to exercise the skill and knowledge normally possessed by members of that profession or trade in good standing in similar communities.").
[81] Restatement (Second) of Torts § 299A cmt. c. (1965).

Ms. Wright did not have a duty to use the skill, prudence, and diligence commonly possessed and exercised by registered client associates in the financial industry in her conduct with respect to Mr. Snead.[82]  There is no evidence in the record that that Ms. Wright undertook to render services to Mr. Snead in the practice of her profession as a client associate.[83]  Plaintiffs contend that Ms. Wright undertook to facilitate transactions with Merrill Lynch by delivering documents and assisting Mr. Snead in communicating with Merrill Lynch.[84]  But Ms. Wright never interacted with Mr. Snead in her capacity as a Merrill Lynch employee.  She never worked with the group of advisors responsible for Mr. Snead's accounts and never provided account-related services for Mr. Snead.[85]  On the other hand, as Mr. Snead's partner, Ms. Wright routinely assisted him with basic tasks as he aged.[86]  The record confirms that specific acts Plaintiffs claim Ms. Wright undertook to facilitate transactions with Merrill Lynch involved this kind of assistance. Ms. Wright was on the line during the July 31, 2017, phone call in which Mr. Snead requested the Wire Transfer to "assist[] with information and [Mr. Snead's] instructions."[87]  She did not participate in confirming the Wire Transfer.[88]  Similarly, her delivery of documents to the

---

[82] Plaintiffs argue that Ms. Wright owed a duty normally exercised by a registered broker. Docket 184 (SEALED) at 29.  This misstates the record.  Ms. Wright never worked as a registered broker.  *See* Docket 172-5 at 3.

[83] *See* Restatement (Second) of Torts § 299A cmt. b. (1965) ("This Section . . . applies to any person who undertakes to render services to another in the practice of a profession. . . .").

[84] Docket 184 (SEALED) at 30–31.

[85] Docket 175 at 5–6.

[86] *E.g.,* Docket 172-5 at 12 (driving Mr. Snead to work five days a week); Docket 184-9 at 16 (bathing Mr. Snead, preparing meals, and managing homemaking tasks for Mr. Snead).

[87] Docket 175-1 at 4.

[88] Docket 192-4 (SEALED).

*Snead, et al. v. Wright, et al.*                                             Case Nos. 3:19-cv-00092-JMK; 3:19-cv-00209-JMK
Order Regarding Pending Motions                                                                                      Page 13

Case 3:19-cv-00092-JMK   Document 206   Filed 05/28/24   Page 13 of 27

Merrill Lynch offices in 2016 was consistent with her assistance to Mr. Snead in her capacity as Mr. Snead's partner.

Furthermore, even if Ms. Wright owed a duty to Plaintiffs in her conduct with respect to Mr. Snead, there is no record evidence that she breached that duty or that a breach proximately caused Plaintiffs' alleged damages. Nothing suggests that Ms. Wright breached a professional duty by assisting Mr. Snead as she did on the July 31 call or that her assistance caused any injury. Similarly, there is no evidence that her delivery of documents in 2016 caused Plaintiffs' alleged injury in 2017.

Plaintiffs also suggest that Ms. Wright assumed a duty of care with respect to Mr. Snead because she acted as his caregiver by assisting him with basic needs like eating and bathing.[89] This is an entirely new theory of negligence not contained in the operative complaint and the Court will not consider it.[90] Although Plaintiffs promise that "[t]rial testimony will allow further exploration" of the issue of Ms. Wright's professional services, at this stage it is their burden to produce evidence showing a genuine issue for trial. Summary judgment dismissing their claim of professional malpractice is warranted because they have not done so. Plaintiffs' claim for professional malpractice against Ms. Wright is **DISMISSED**.

---

[89] Docket 184 (SEALED) at 31.
[90] *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000) (holding that parties cannot assert unpled theories for the first time at the summary judgment stage, unless they have made known during discovery their intention to pursue recovery on a different theory).

*Snead, et al. v. Wright, et al.*                                    Case Nos. 3:19-cv-00092-JMK; 3:19-cv-00209-JMK
Order Regarding Pending Motions                                                              Page 14
Case 3:19-cv-00092-JMK   Document 206   Filed 05/28/24   Page 14 of 27

**(2)** **Summary judgment is appropriate with respect to Plaintiffs' claim of conversion with respect to the Irrevocable Trust**

Ms. Wright argues that summary judgment dismissing the Irrevocable Trust's claims for fraud and conversion is appropriate for the same reason that Merrill Lynch articulated in a separate motion: that the Irrevocable Trusts lacks standing.[91]  In the alternative, Ms. Wright asserts that summary judgment is warranted because there is no evidence to support any of the allegations in the complaint as to conversion.[92]  Plaintiffs' Opposition omits any discussion of claims related to the Irrevocable Trust.  Instead, they dedicate their briefing to showing there is a viable claim of conversion based in part on Ms. Wright's conduct with respect to the Wire Transfer.[93]

Plaintiffs allege that Ms. Wright intentionally interfered with the Irrevocable Trust by "improperly removing funds using her status as a Merrill Lynch employee" and by failing to inform Plaintiffs that John H. Snead could not act as both settlor and trustee.[94] They further allege that Ms. Wright is liable for conversion because she interfered with Plaintiffs' ownership interest in the Transamerica Annuity.[95]  In their complaints, Plaintiffs did not allege any claim of conversion based on Ms. Wright's conduct with respect to the Wire Transfer from the Revocable Trust.  And they may not do so at this stage in the proceedings.  Parties cannot assert unpled theories for the first time at the summary judgment stage, unless they have made known during discovery their intention to pursue

---

[91] Docket 172-1 at 25.
[92] *Id.* at 26.
[93] Docket 184 (SEALED) at 21–25.
[94] Docket 33-1 at 9.
[95] Docket 103 at 11, *Snead et al. v. Wright et al.*, Case No. 3:19-cv-00209.

*Snead, et al. v. Wright, et al.*                                    Case Nos. 3:19-cv-00092-JMK; 3:19-cv-00209-JMK
Order Regarding Pending Motions                                                                    Page 15

Case 3:19-cv-00092-JMK   Document 206   Filed 05/28/24   Page 15 of 27

recovery on a different theory.[96]  There is no indication that such is the case here. Furthermore, Plaintiffs' attempt to resurrect a conversion claim here goes well beyond asserting an unpled legal theory and seeks to establish a new claim based on new facts.

Turning to Plaintiffs' claim for conversion related to the Irrevocable Trust, summary judgment is appropriate.  "To establish a claim for conversion, the plaintiff must prove (1) that [they] had a possessory interest in the property; (2) that the defendant interfered with the plaintiff's right to possess the property; (3) that the defendant intended to interfere with plaintiff's possession; and (4) that the defendant's act was the legal cause of the plaintiff's loss of the property."[97]  The record demonstrates that Merrill Lynch did not maintain any account on the behalf of the Irrevocable Trust.[98]  And there is no evidence that Ms. Wright acted in any way that interfered with the Irrevocable Trust.  Ultimately, there is no evidence that supports Plaintiffs' theory that Ms. Wright intentionally interfered with the Irrevocable Trust by "improperly removing funds using her status as a Merrill Lynch employee."[99]  Plaintiffs' conversion claim related to the Irrevocable Trust therefore is **DISMISSED**.

**(3)    Summary judgment is appropriate with respect to the claims for fraudulent nondisclosure and fraudulent use of the signature stamp**

Ms. Wright next argues that summary judgment dismissing Plaintiffs' claim of fraudulent nondisclosure related to the Irrevocable Trust should be granted.[100]  She

---

[96]  *See Quaker Oats Co.*, 232 F.3d at 1294.
[97]  *Silvers v. Silvers*, 999 P.2d 786, 793 (Alaska 2000).
[98]  Docket 175 at 3.
[99]  Docket 33-1 at 9.
[100]  Docket 172-1 at 27.

*Snead, et al. v. Wright, et al.*                                    Case Nos. 3:19-cv-00092-JMK; 3:19-cv-00209-JMK
Order Regarding Pending Motions                                                                              Page 16
Case 3:19-cv-00092-JMK   Document 206   Filed 05/28/24   Page 16 of 27

contends that no evidence supports Plaintiffs' claim that Ms. Wright had a duty to disclose an error recorded on the Snead Irrevocable Trust or that she failed to do so.[101] Furthermore, Ms. Wright asserts that Plaintiffs' claim for fraudulent use of the signature stamp must be dismissed because no evidence shows that Ms. Wright applied Mr. Snead's signature stamp to documents related to the Wire Transfer.[102]

Although Plaintiffs discuss whether Alaska statute implies a private right of action for fraud, they do not point to any evidence that supports their claim.[103] Indeed, Plaintiffs concede that they cannot produce facts to support either of these fraud claims. They write, "[w]hile the elements of fraud by misrepresentation may not be apparent in this case based on the current universe of facts, it is difficult to imagine that Wright's actions do not constitute actionable fraud."[104] Without citation to any record evidence, they then claim that Ms. Wright forged the beneficiary change form.[105]

At summary judgment, a movant can either cite the record or show "that the materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."[106] Once the movant has made such a showing, the non-movant "bears the burden of production under [FRCP] 56

---

[101] *Id.*
[102] *Id.* at 28.
[103] Docket 184 (SEALED) at 27–28.
[104] *Id.* at 28.
[105] The Court notes that it already dismissed the fraud claim related to the Change of Beneficiary form. *See* Docket 146 at 9–11, *Snead et al. v. Wright et al.*, Case No. 3:19-cv-00209. Counsel is reminded that, by signing a written motion or other paper, they represent that the legal contentions therein are warranted by law and the factual contentions have evidentiary support. *See* Fed. R. Civ. P. 11(b).
[106] Fed. R. Civ. P. 56(c)(1).

*Snead, et al. v. Wright, et al.*                    Case Nos. 3:19-cv-00092-JMK; 3:19-cv-00209-JMK
Order Regarding Pending Motions                                                        Page 17

Case 3:19-cv-00092-JMK   Document 206   Filed 05/28/24   Page 17 of 27

to 'designate specific facts showing that there is a genuine issue for trial.'"[107]  Plaintiffs admit that they cannot carry their burden of designating specific facts showing a genuine issue for trial.  This ends the Court's inquiry.  Summary judgment is **GRANTED** and Plaintiffs' fraudulent non-disclosure claim related to the Irrevocable Trust and fraudulent use of the signature stamp claim are **DISMISSED**.

### (4) Summary judgment is not appropriate with respect to Plaintiff's claim of conversion related to the Transamerica Annuity

Ms. Wright argues that summary judgment dismissing Plaintiffs' conversion claim related to the Transamerica Annuity should be granted because, at the time Mr. Snead executed the Change of Beneficiary form, Plaintiffs had no present possessory interest in the proceeds of the Annuity.[108]  Plaintiffs respond that, by statute, they were *de facto* beneficiaries of the Annuity and therefore had a possessory interest.[109]  They further argue that they stand in the shoes of Mr. Snead as owner of the Annuity because they are asserting claims on behalf of the Revocable Trust and estate and have a possessory interest on that basis.[110]

"The tort of conversion is an intentional exercise of dominion and control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel."[111]  "To establish

---

[107] *Ricci*, 557 U.S. at 586 (2009) (quoting *Celotex Corp. v.* 477 U.S.at 324).
[108] Docket 172-1 at 29–31.
[109] Docket 184 (SEALED) at 20–21.
[110] *Id.*
[111] *K & K Recycling, Inc. v. Alaska Gold Co.*, 80 P.3d 702, 717 (Alaska 2003) (internal quotations and citations omitted).

*Snead, et al. v. Wright, et al.*                                    Case Nos. 3:19-cv-00092-JMK; 3:19-cv-00209-JMK
Order Regarding Pending Motions                                                                      Page 18
Case 3:19-cv-00092-JMK   Document 206   Filed 05/28/24   Page 18 of 27

a conversion claim, a plaintiff must prove that it had a possessory interest in the property, that the defendant[] intentionally interfered with the plaintiff's possession, and that the defendant['s] acts were the legal cause of the plaintiff's loss of property."[112] "[A] future possessory interest is sufficient for a plaintiff to maintain an action for conversion."[113]

Ms. Wright has not demonstrated that summary judgment is warranted with respect to this claim. Plaintiffs need not have had a current possessory interest at the time of the conversion. As discussed, Alaska law is clear that a future possessory interest is sufficient. Summary judgment is **DENIED** with respect to Plaintiffs' claim of conversion of the Annuity.

### 5. Summary judgment is appropriate with respect to Plaintiffs' claim of intentional interference with contract

Finally, Ms. Wright argues that Plaintiffs' claim for intentional interference with contract related to the Annuity must be dismissed because they cannot show the element of breach.[114] Plaintiffs do not respond directly. They argue that Plaintiffs would have inherited the proceeds of the Annuity but for Ms. Wright's undue influence.[115]

Under Alaska law, "[t]he tort of intentional interference with contractual relations has six elements: (1) an existing contract between the plaintiff and a third party; (2) defendant's knowledge of the contract and intent to induce a breach; (3) breach; (4) wrongful conduct of the defendant causing the breach; (5) damages; and (6) absence of

---

[112] *Id.*

[113] *McKibben v. Mohawk Oil Co., Ltd.,* 667 P.2d 1223, 1229 (Alaska 1983), *overruled on other grounds by Wien Air Alaska v. Bubbel,* 723 P.2d 627, 631 n.4 (Alaska 1986).

[114] Docket 172-1 at 32.

[115] Docket 184 (SEALED) at 25–26.

*Snead, et al. v. Wright, et al.*                                    Case Nos. 3:19-cv-00092-JMK; 3:19-cv-00209-JMK
Order Regarding Pending Motions                                                                        Page 19

Case 3:19-cv-00092-JMK   Document 206   Filed 05/28/24   Page 19 of 27

privilege or justification for the defendant's conduct."[116]  Plaintiffs allege that Ms. Wright intentionally interfered with the contract Mr. Snead had with Merrill Lynch and Transamerica related to the management of the Annuity.[117]  But this Court previously dismissed Plaintiffs' claim that Transamerica breached a contract.[118]  And Plaintiffs have not identified any evidence of breach.  Accordingly, Plaintiffs cannot establish the second element of their claim for intentional interference with contract—and the claim must be **DISMISSED**.  Summary judgment is **GRANTED**.

## B.     Merrill Lynch's *Motion for Summary Judgment*

At Docket 173, Merrill Lynch moves for summary judgment on all claims Plaintiffs assert against it.  As explained below, Merrill Lynch's *Motion for Summary Judgment* is **GRANTED**.  The claims against Merrill Lynch are **DISMISSED**.

### (1)     Trustee Certifications shield Merrill Lynch from liability for completing the Wire Transfer and processing the Change of Beneficiary form

Merrill Lynch argues that Trustee Certifications Mr. Snead provided when he opened the Trust Accounts and Alaska law shield it from liability for its role in performing the August 3, 2017, wire transfer ("the Wire Transfer") and processing the Change of Beneficiary form.[119]  In its view, Merrill Lynch is not liable because it reasonably relied upon Mr. Snead's representations that he had authority to initiate the

---

[116] *Cornelison v. TIG Ins.*, 376 P.3d 1255, 1269 (Alaska 2016) (internal quotations and alterations omitted).

[117] *See* Docket 103 at 11–12, *Snead et al. v. Wright et al.*, Case No. 3:19-cv-00209.

[118] Docket 146 at 21, *Snead et al. v. Wright et al.*, Case No. 3:19-cv-00209.

[119] Docket 173 at 16–20.

*Snead, et al. v. Wright, et al.*                                Case Nos. 3:19-cv-00092-JMK; 3:19-cv-00209-JMK
Order Regarding Pending Motions                                                                    Page 20

Case 3:19-cv-00092-JMK   Document 206   Filed 05/28/24   Page 20 of 27

Wire Transfer and change the beneficiary of his annuity.[120] Plaintiffs respond that the existence of Trustee Certifications does not absolve Merrill Lynch of its obligation to exercise the standard of care as a securities broker.[121] Plaintiffs clarify that their claims are based on Merrill Lynch's alleged failure to fulfill their duties by allowing an employee to access private information and provide instructions for transactions that benefitted her.[122]

Under Alaska law, a trustee "may furnish to [a person other than a beneficiary] a certification of trust containing" certain information.[123] Furthermore, "[a] person who acts in reasonable reliance on a certification of trust without knowledge that the representations contained in the certification of trust are incorrect is not liable to another person for acting in reasonable reliance on the certification of trust and may assume without inquiry the existence of the facts contained in the certification."[124] When Mr. Snead established the first of Trust Accounts at Merrill Lynch in 1998, he signed a Trustee Certification Form that represented that Merrill Lynch was authorized to "make distributions or transfers" of Revocable Trust assets "to beneficiaries and others as [Mr. Snead] may direct" and "exercise all rights associated with the ownership of . . . annuity contracts, including but not limited to . . . making designations of beneficiaries;" and (2) Merrill Lynch "shall be entitled to assume the existence of a trust power and the proper exercise of trust power by [Mr. Snead] without inquiry" and "shall have no

---

[120] *Id.*
[121] Docket 181 (SEALED) at 10.
[122] *Id.*
[123] Alaska Stat. § 13.36.079(a).
[124] Alaska Stat. § 13.36.079(f).

*Snead, et al. v. Wright, et al.*                    Case Nos. 3:19-cv-00092-JMK; 3:19-cv-00209-JMK
Order Regarding Pending Motions                                                      Page 21
Case 3:19-cv-00092-JMK   Document 206   Filed 05/28/24   Page 21 of 27

responsibility to assure the proper application of trust funds, securities or other assets by [Mr. Snead]."[125]

Plaintiffs have not produced any evidence to suggest that Merrill Lynch's reliance on these Trustee Certifications was unreasonable. And the only evidence that might undermine the reasonableness of Merrill Lynch's reliance—the recording of telephone conversations authorizing the Wire Transfer—indicates that Merrill Lynch's reliance was entirely reasonable as Mr. Snead clearly and cogently confirms the transaction.[126] This evidence demonstrates that Merrill Lynch had no reason to suspect Mr. Snead lacked capacity or was subject to undue influence.

Therefore, Plaintiffs are barred from recovering against Merrill Lynch for injuries they assert they suffered due to Merrill Lynch's completion of the Wire Transfer. Merrill Lynch was permitted to reasonably rely on the Trustee Certifications authorizing it to "make distributions or transfers . . . as [Mr. Snead] may direct," entitling it "to assume the existence of a trust power and the proper exercise of trust power by [Mr. Snead] without inquiry," and absolving it of "responsibility to assure the proper application of trust funds, securities or other assets by [Mr. Snead]."[127] Plaintiffs allege that they were injured when Merrill Lynch completed the Wire Transfer. But when Merrill Lynch did so, it relied on Mr. Snead's express direction to do so and, under the Trustee Certification, was entitled to

---

[125] Docket 174-5 at 2.
[126] *See* Docket 192-4 (SEALED).
[127] Docket 174-5 at 2.

*Snead, et al. v. Wright, et al.*                                   Case Nos. 3:19-cv-00092-JMK; 3:19-cv-00209-JMK
Order Regarding Pending Motions                                                                 Page 22
Case 3:19-cv-00092-JMK   Document 206   Filed 05/28/24   Page 22 of 27

assume Mr. Snead's capacity to authorize the transfer in the absence of any indication to the contrary.

Similarly, Plaintiffs may not recover against Merrill Lynch for injuries they suffered due to its processing of the Change of Beneficiary form as it was permitted to rely on the Trustee Certification and "exercise all rights associated with the ownership of . . . annuity contracts, including but not limited to . . . making designations of beneficiaries."[128]

Plaintiffs argue, without citation, that "the Trustee Certification cannot be viewed as contracting around Merrill Lynch's ordinary duty to customers" and that no cases support such a result.[129]  However, the plain language of Alaska Stat. § 13.36.079(f) provides an express exemption from liability—a person is "not liable to another person for acting in reasonable reliance on the certification of trust and may assume without inquiry the existence of the facts contained in the certification."  Furthermore, courts in other jurisdictions have concluded that statutes with similar language to Alaska Stat. § 13.36.079(f) bar common law claims like those raised by Plaintiff.[130]

Accordingly, Merrill Lynch is immune from liability for carrying out Mr. Snead's instructions to complete the Wire Transfer and process the Change of Beneficiary form.  Summary judgment dismissing Plaintiffs' claims for breach of fiduciary

---

[128] *Id.*

[129] Docket 181 (SEALED) at 10.

[130] *Johnson as Tr. of Nina J. Cummings Revocable Living Tr. v. Wells Fargo Bank, N.A.*, No. 2:22-cv-00196-JCM-EJY, 2022 WL 2124392, at *5–7 (D. Nev. May 20, 2022), *report and recommendation adopted*, 2022 WL 2119073 (D. Nev. June 13, 2022) (applying NRS 164.430.1, which contains language comparable to that in Alaska Stat. § 13.36.079(f), to bar a negligence claim); *Schroeder v. James B. Nutter & Co.*, No. CV1203801MWFFFMX, 2013 WL 12114824, at *3–5 (C.D. Cal. Jan. 29, 2013) (applying California Probate Code Section 18100.5(f), which contains language comparable to that in Alaska Stat. § 13.36.079(f)).

*Snead, et al. v. Wright, et al.*                                        Case Nos. 3:19-cv-00092-JMK; 3:19-cv-00209-JMK
Order Regarding Pending Motions                                                                              Page 23

Case 3:19-cv-00092-JMK   Document 206   Filed 05/28/24   Page 23 of 27

duty as to the John H. Snead Irrevocable Trust, negligence as to the John H. Snead Revocable Trust, vicarious liability, violations of the Unfair Trade Practices Act, fraud, and breach of the covenant of good faith and fair dealing is warranted. These claims are **DISMISSED**.

### (2) Plaintiffs lack standing to assert claims related to the Irrevocable Trust

Next, Merrill Lynch argues that the claims related to the Irrevocable Trust must be dismissed as the Plaintiffs lack standing to assert them.[131] In its view, Plaintiffs did not suffer an injury-in-fact that is traceable to Merrill Lynch's conduct with respect to the Irrevocable Trust because no accounts associated with the Irrevocable Trust were maintained at Merrill Lynch.[132] Plaintiffs do not respond.[133]

Article III requires a plaintiff demonstrate standing to sue in federal court.[134] To have standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."[135] To establish the second element of standing—traceability—"there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court."[136]

---

[131] Docket 173 at 20–21.
[132] *Id.* at 21.
[133] *See* Docket 181 (SEALED).
[134] *Lujan v. Def's. of Wildlife*, 504 U.S. 555, 560–61 (1992).
[135] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).
[136] *Lujan*, 504 U.S. at 560 (internal quotations and citations omitted).

*Snead, et al. v. Wright, et al.*
Order Regarding Pending Motions
Case Nos. 3:19-cv-00092-JMK; 3:19-cv-00209-JMK
Page 24

Case 3:19-cv-00092-JMK   Document 206   Filed 05/28/24   Page 24 of 27

Plaintiffs lack standing to assert claims related to the Irrevocable Trust as they have not demonstrated that they suffered an injury that can be traced to any action Merrill Lynch took. It is undisputed that Merrill Lynch did not maintain any accounts associated with the Irrevocable Trust.[137] Accordingly, they took no actions with respect to the Irrevocable Trust that injured Plaintiffs. Summary judgment dismissing all claims related to the Irrevocable Trust against Merrill Lynch is warranted. These claims are **DISMISSED**.

### (4) **Plaintiffs cannot maintain a claim for negligent hiring, training, and supervision**

Merrill Lynch argues that the negligent hiring, training, and supervision claim fails because Plaintiffs have not produced any evidence that Merrill Lynch knew, or should have known, that hiring Ms. Wright created a particular risk that later materialized or that there was a systemic problem to support their claim.[138] In response, Plaintiffs assert that Merrill Lynch failed to train and supervise Ms. Wright and other employees who were responsible for Mr. Snead's accounts.[139] In their view, Merrill Lynch employees violated Financial Industry Regulatory Authority and internal policies so many times that these violations reflect a systematic failure of training and supervision.[140] In particular, Plaintiffs note that employees failed to authenticate what phone number was used in phone calls requesting that they make transactions, which violated Merrill Lynch policy.[141]

---

[137] *See* Docket 175 at 3.
[138] Docket 173 at 26–27.
[139] Docket 181 (SEALED) at 30.
[140] *Id.*
[141] *Id.* at 32.

*Snead, et al. v. Wright, et al.*      Case Nos. 3:19-cv-00092-JMK; 3:19-cv-00209-JMK
Order Regarding Pending Motions      Page 25

Case 3:19-cv-00092-JMK    Document 206    Filed 05/28/24    Page 25 of 27

The torts of negligent hiring, training, and supervision impose direct liability on an employer for its negligence as it relates to an employee.[142]  *First*, "[t]he tort of negligent hiring generally focuses on whether the employer should have known that hiring the employee created a particular risk and that particular risk then materializes."[143]  Here, Plaintiffs do not argue that Merrill Lynch negligently hired Ms. Wright and do not produce any evidence that Merrill Lynch knew or should have known of a risk in hiring her.[144]  Therefore, summary judgment is warranted with respect to Plaintiffs' negligent hiring claim.

*Second*, "under Alaska law, a negligent training and supervision claim will succeed where the plaintiff demonstrates a system-wide problem that involves the same wrongdoing or supervisory negligence to correct the problem."[145]  The evidence adduced in this case does not suggest a system-wide problem that involves the same wrongdoing or supervisory negligence.  Plaintiffs argue that "[t]he FINRA and internal policy violations that occurred in relation to Mr. Snead's accounts are so numerous that they reflect a systematic failure of training and supervision."[146]  In truth, Plaintiffs identify several discrete acts:  employees' failure to enter the phone number Mr. Snead used to call Merrill Lynch and request a transaction in the appropriate database, failure to report "red flags" of

---

[142] *Donahue v. Ledgends, Inc.*, 331 P.3d 342, 350 n.40 (Alaska 2014).
[143] *Cabales v. Morgan*, No. 3:14-cv-00161-JWS, 2015 WL 2449590, at *4 (D. Alaska May 22, 2015).
[144] *See* Docket 181 (SEALED) at 30–32.
[145] *Pennington v. Providence Health & Servs.*, No. 3:10-cv-00191-TMB, 2013 WL 12099643, at *1 (D. Alaska Aug. 27, 2013) (citing *Prentzel v. State, Dep't of Pub. Safety*, 169 P.3d 573, 590 (Alaska 2007)).
[146] Docket 181 (SEALED) at 30.

*Snead, et al. v. Wright, et al.*                                          Case Nos. 3:19-cv-00092-JMK; 3:19-cv-00209-JMK
Order Regarding Pending Motions                                                                                     Page 26

Case 3:19-cv-00092-JMK   Document 206   Filed 05/28/24   Page 26 of 27

financial abuse after Mr. Snead and Ms. Wright called on July 31, 2017, to request the Wire Transfer while Mr. Snead was hospitalized, the transfer of funds from a client account to a joint account owned by a Merrill Lynch employee, and the hand-delivery of account documents. The nature and number of these acts do not suggest a system-wide problem. And, further, the Court disagrees that the evidence supports Plaintiffs' characterization of these acts. As such, summary judgment is **GRANTED** and Plaintiffs' negligent hiring, training, and supervision claim is **DISMISSED**.

## IV. CONCLUSION

For the foregoing reasons, the Court rules follows:

1. Ms. Wright's *Partial Motion for Summary Judgment* at Docket 172 is **GRANTED IN PART AND DENIED IN PART**. Plaintiffs' claims for professional malpractice, conversion with respect to the Irrevocable Trust, fraudulent nondisclosure, fraudulent use of the signature stamp, and intentional interference with contract related to the Annuity are **DISMISSED**.

2. Merrill Lynch's *Motion for Summary Judgment* at Docket 173 is **GRANTED**. All Plaintiffs' claims against Merrill Lynch are **DISMISSED**.

IT IS SO ORDERED this 28th day of May, 2024, at Anchorage, Alaska.


*/s/ Joshua M. Kindred*

JOSHUA M. KINDRED
United States District Judge

*Snead, et al. v. Wright, et al.*                    Case Nos. 3:19-cv-00092-JMK; 3:19-cv-00209-JMK
Order Regarding Pending Motions                                      Page 27

Case 3:19-cv-00092-JMK   Document 206   Filed 05/28/24   Page 27 of 27