# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

MONIQUE R. SNEAD, individually, and as Personal Representative of the Estate of John H. Snead, JOHN G. SNEAD, individually and as Trustee of the Snead Irrevocable Trust; MONIQUE R. SNEAD and JOHN G. SNEAD, both individually and as beneficiaries of the John H. Snead Revocable Trust and the Snead Irrevocable Trust, and KAREN S. SNEAD,

        Plaintiffs,

    v.

GUADALUPE C. WRIGHT; and MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, a Delaware corporation doing business in the State of Alaska,

        Defendants.

Case No. 3:19-cv-00092-SLG
Case No. 3:19-cv-00209-SLG
(Consolidated)

## ORDER ON MOTION FOR REVIEW AND VACATION OF ORDERS RE: SUMMARY JUDGMENT AND RECONSIDERATION

Before the Court at Docket 213 is Plaintiffs' *Motion for Review and Vacation of Orders Re: Summary Judgment and Reconsideration*. Defendant Guadalupe Wright filed an opposition at Docket 218. Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") filed an opposition and request for a virtual

oral argument at Docket 219.  Plaintiffs filed a reply at Docket 224.  Oral argument was held virtually on January 24, 2025.[1]

## BACKGROUND AND PROCEDURAL HISTORY

The facts of the case are well known to the parties and are only briefly set forth here.  Plaintiffs' allegations arise from transactions involving two accounts that the John H. Snead Revocable Trust ("Revocable Trust") held with Merrill Lynch.  The first account (the "5343 Account") held investments managed by Merrill Lynch employee Michael Murphy and the second (the "7695 Account") held an annuity issued by Transamerica.  Plaintiffs specifically dispute: (1) the last wire transfer from the 5343 Account totaling $358,000 (the "Wire Transfer") to a joint credit union account maintained by John H. Snead and Ms. Wright; and (2) the execution of a change of beneficiary form for the Transamerica annuity held in the 7695 Account ("Change of Beneficiary") that named Ms. Wright as the sole beneficiary of the annuity.[2]

On May 23, 2024, the Ninth Circuit Judicial Council issued Order No. 22-90121, addressing a judicial misconduct complaint filed against former Judge Joshua M. Kindred.[3]  The Council released the order to the public on July 8, 2024.[4]

---

[1] *See* Docket 229.

[2] Docket 181 (SEALED) at 2.

[3] Judicial Council of the Ninth Circuit Order No. 22-90121, https://cdn.ca9.uscourts.gov/datastore/uploads/misconduct/22-90121.pdf (last visited March 7, 2025).

[4] Bill Cracraft, U.S. Cts. For the Ninth Cir., *News Release: Judicial Conduct and Disability*

Case No. 3:19-cv-00092-SLG (consolidated), *Snead, et al. v. Wright, et al.*
Order on Motion for Review and Vacation of Orders
Page 2 of 43

Case 3:19-cv-00092-SLG    Document 234    Filed 07/10/25    Page 2 of 43

In view of the findings, the Judicial Council certified that Judge Kindred "engaged in conduct that might constitute one or more grounds for impeachment under Article II of the Constitution," ordered public reprimand, and requested his voluntary resignation.[5]

Prior to the Council's order, Judge Kindred appeared before the Council on April 5, 2024.[6]  Oral argument on Merrill Lynch's motion for summary judgment was held before Judge Kindred on April 11, 2024.[7]  Judge Kindred issued the order regarding Defendants' summary judgment motions on May 28, 2024 (the "206 Order").[8]  The 206 Order granted Merrill Lynch's motion for summary judgment in full and partially granted summary judgment in favor of Ms. Wright.  The 206 Order denied Ms. Wright's motion for summary judgment on Plaintiffs' claim for conversion of the Transamerica annuity;  Ms. Wright did not seek summary judgment on Plaintiffs' undue influence claims.

On July 3, 2024, Judge Kindred issued the order denying Plaintiffs' motion for reconsideration (the "208 Order").[9]  That same day, Judge Kindred resigned

---

*Complaint Number 22-90121* (July 8, 2024), https://cdn.ca9.uscourts.gov/datastore/ce9/2024/22-90121%20News%20Release%20&%20Order%20and%20Certification.pdf (last visited July 8, 2025).

[5] Judicial Council of the Ninth Circuit Order No. 22-90121, at 2.

[6] Docket 213 at 3–4 (citing Judicial Council of the Ninth Circuit Order No. 22-90121, at 2).

[7] Docket 202.

[8] Docket 206.

[9] Docket 208.

Case No. 3:19-cv-00092-SLG (consolidated), *Snead, et al. v. Wright, et al.*
Order on Motion for Review and Vacation of Orders
Page 3 of 43

Case 3:19-cv-00092-SLG    Document 234    Filed 07/10/25    Page 3 of 43

from his position as United States District Judge; the resignation became effective on July 8, 2024.[10]

Plaintiffs subsequently filed the instant motion on September 9, 2024.[11] Plaintiffs ask this Court to vacate the 206 Order and the 208 Order and review anew Defendants' summary judgment motions pursuant to Federal Rule of Civil Procedure 60(b)(6).[12] Plaintiffs also request relief under Federal Rule of Civil Procedure 54(b) and the Court's common law authority to review and vacate orders in the furtherance of justice.[13]

## LEGAL STANDARD

Federal Rule of Civil Procedure 60(b)(6) is not applicable to Plaintiffs' motion because no final judgment has been entered in this matter.[14] The 206 and 208 Orders did not "end[ ] the litigation on the merits and leave[ ] nothing for the court to do but execute the judgment," as the Court did not enter an appealable order or a final judgment as to either Defendant.[15] Rather, "[i]t is axiomatic that orders

---

[10] *See* Press Release, United States District Court, District of Alaska, District Court of Alaska Receives Resignation 7/5/2024 (July 5, 2024), https://www.akd.uscourts.gov/news/district-court-alaska-receives-resignation-752024 (last visited March 7, 2025).

[11] Docket 213.

[12] Docket 213 at 6–8.

[13] Docket 213 at 7–9; Docket 224 at 2 & n.2.

[14] Federal Rule of Civil Procedure 60(b) provides that "the court may relieve a party or its legal representative from a final judgment, order, or proceeding."

[15] *In re Frontier Props., Inc.*, 979 F.2d 1358, 1362 (9th Cir. 1992) (internal quotation marks omitted) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)).

Case No. 3:19-cv-00092-SLG (consolidated), *Snead, et al. v. Wright, et al.*
Order on Motion for Review and Vacation of Orders
Page 4 of 43

Case 3:19-cv-00092-SLG    Document 234    Filed 07/10/25    Page 4 of 43

granting partial summary judgment, because they do not dispose of all claims, are not final appealable orders."[16] Therefore, Rule 60(b) does not apply here. Accordingly, to the extent that Plaintiffs' motion seeks relief from the 206 and 208 Orders under Rule 60(b), the motion is denied.

Rather, a district court has "inherent power rooted firmly in the common law" to "rescind an interlocutory order over which it has jurisdiction."[17] And the law of the case doctrine "does not impinge upon a district court's power to reconsider its own interlocutory order provided that the district court has not been divested of jurisdiction over the order."[18] Thus, because this Court retains jurisdiction in this case, it "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient."[19] Further, Rule 54(b) of the Federal Rules of Civil Procedure provides, in relevant part, that:

> any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

---

[16] *Cheng v. Comm'r*, 878 F.2d 306, 309 (9th Cir. 1989) (citations omitted).

[17] *Cty. of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 887 (9th Cir. 2001).

[18] *Id.* at 888.

[19] *Id.* at 885 internal quotation marks omitted) (quoting *Melancon v. Texaco, Inc*, 659 F.2d 551, 553 (5th Cir. 1981).

Case No. 3:19-cv-00092-SLG (consolidated), *Snead, et al. v. Wright, et al.*
Order on Motion for Review and Vacation of Orders
Page 5 of 43

Case 3:19-cv-00092-SLG    Document 234    Filed 07/10/25    Page 5 of 43

Plaintiffs assert that this Court should reconsider the prior orders because they contain manifest errors.[20] The Ninth Circuit has held that reconsideration of a non-final order is appropriate when it is necessary to correct clear error or prevent manifest injustice.[21]

## DISCUSSION

Plaintiffs seek relief from the 206 Order granting summary judgment in favor of Merrill Lynch and partial summary judgment in favor of Ms. Wright, and from the 208 Order denying reconsideration.[22] Plaintiffs allege that "[t]he circumstances warranting review are extraordinary, and the legal errors contained in the Orders are manifest."[23] In their briefs, Plaintiffs refer generally to the arguments in their Opposition to Merrill Lynch's Motion for Summary Judgment at Docket 181 and their Motion for Reconsideration at Docket 207.[24]

Ms. Wright and Merrill Lynch ask the Court to deny Plaintiffs' motion for review and vacation of orders, countering that Plaintiffs cannot show that the events resulting in former Judge Kindred's resignation and public reprimand

---

[20] Docket 213 at 8.

[21] *See Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); *see also* D. Alaska L. Civ. R. 7.3(h)(1)(A) (identifying "manifest error of the law or fact" as a basis for reconsideration).

[22] *See* Docket 206; Docket 208.

[23] Docket 213 at 8.

[24] Docket 213 at 7.

Case No. 3:19-cv-00092-SLG (consolidated), *Snead, et al. v. Wright, et al.*
Order on Motion for Review and Vacation of Orders
Page 6 of 43

influenced the disposition of the motions for summary judgment and reconsideration.[25]

## I. The Court Will Not Disturb the 206 Order and 208 Order Partially Granting Ms. Wright's Motion for Partial Summary Judgment

Although Plaintiffs' motion includes a request for the Court to review the 206 Order's granting of Ms. Wright's Motion for Partial Summary Judgment, Plaintiffs do not separately address their claims against Ms. Wright in their current motion.[26] The focus of Plaintiffs' current motion, as with their prior motion for reconsideration, is on the granting of Merrill Lynch's summary judgment motion.[27] Consequently, the Court will not disturb the 206 Order or the 208 Order with respect to Plaintiffs' claims against Ms. Wright, as Plaintiffs have not identified any manifest error in those rulings.

## II. The Court Will Review Anew the 206 Order Granting Merrill Lynch's Summary Judgment Motion and the 208 Order Denying Plaintiffs' Motion for Reconsideration

The 206 Order determined that Merrill Lynch was "immune from liability" under Alaska Statute § 13.36.079(f), based on the Trustee Certification forms signed by Mr. Snead as trustee of the John H. Snead Revocable Trust in 1999 and 2016.[28] On this basis, the Court dismissed all of Plaintiffs' claims against Merrill

---

[25] Docket 219 at 2.

[26] *See* Docket 213.

[27] Docket 213 at 5–6; Docket 207 at 5–6.

[28] Docket 206 at 23; *see* Docket 174-3; Docket 174-5.

Case No. 3:19-cv-00092-SLG (consolidated), *Snead, et al. v. Wright, et al.*
Order on Motion for Review and Vacation of Orders
Page 7 of 43

Case 3:19-cv-00092-SLG    Document 234    Filed 07/10/25    Page 7 of 43

Lynch related to its role in performing the Wire Transfer and in processing the Change of Beneficiary form.[29] Specifically, the 206 Order found that there was no "evidence to suggest that Merrill Lynch's reliance on these Trustee Certifications was unreasonable."[30] The summary judgment order also dismissed Plaintiffs' negligent hiring claims for failure to present evidence that Merrill Lynch knew or should have known of any risk in hiring Ms. Wright and dismissed Plaintiffs' negligent training and supervision claims for failure to present evidence suggesting a system-wide problem that involved the same wrongdoing or supervisory negligence.[31]

In their June 2024 motion for reconsideration, Plaintiffs asserted that the Court made its own evidentiary findings in the 206 Order, that it erroneously relied upon Defendants' characterization of the facts, and that its application of AS § 13.36.079(f) was overbroad.[32]

There are several manifest errors of fact in the 206 and 208 Orders. The 208 Order acknowledged a factual error in the 206 Order; in the 206 Order, the Court had found no genuine dispute of fact that Mr. Snead had had a telephonic account review with his Merrill Lynch advisor Michael Murphy on July 25, 2017,

---

[29] Docket 206 at 23–24.

[30] Docket 206 at 22.

[31] Docket 206 at 25–27.

[32] Docket 213 at 5; Docket 207.

Case No. 3:19-cv-00092-SLG (consolidated), *Snead, et al. v. Wright, et al.*
Order on Motion for Review and Vacation of Orders
Page 8 of 43

during which Mr. Snead was surprised to learn that his ex-wife was still listed as the beneficiary of the Transamerica annuity.[33] In fact, there is no record of such a call occurring on that date and whether that review took place at all before the Change of Beneficiary form was completed is clearly disputed.[34] The 208 Order acknowledged this error in the 206 Order, but determined "this factual error is not material."[35]  Next, the 208 Order repeatedly references an August 3, 2017 phone call in which Mr. Snead authorized the Wire Transfer;[36]  in fact, it is undisputed that this phone call occurred on July 31, 2017.[37] And the 208 Order faulted Plaintiffs for not producing any evidence showing that "Merrill Lynch knew Mr. Snead lacked capacity at the time of the August 3, 2017 call."[38]  But Plaintiffs' opposition to Merrill Lynch's summary judgment motion cited to appended evidence that Mr. Snead was in the hospital on the date of the July 31, 2017 authorization, that he was "very groggy and lightheaded when on the highest dose of lodicaine," that the Wire Transfer was conducted on Ms. Wright's personal cell phone number, and that the

---

[33] Docket 206 at 7.

[34] *See* Docket 181 at 6.

[35] Docket 208 at 3.

[36] *See* Docket 208 at 4.

[37] Docket 181 at 6–7; Docket 173 at 4; Docket 172-1 at 12.

[38] Docket 208 at 4.

Case No. 3:19-cv-00092-SLG (consolidated), *Snead, et al. v. Wright, et al.*
Order on Motion for Review and Vacation of Orders
Page 9 of 43

Case 3:19-cv-00092-SLG    Document 234    Filed 07/10/25    Page 9 of 43

Wire Transfer funds were to be transferred into the same account where Ms. Wright's Merrill Lynch paychecks were direct deposited.[39]

More fundamentally, the 208 Order held that summary judgment for Merrill Lynch was warranted because the "plain language" of AS § 13.36.079(f) "makes clear that Plaintiffs may not recover against Merrill Lynch unless it had actual knowledge that Mr. Snead lacked capacity to make the Wire Transfer."[40] According to the 208 Order, "[t]he issue is not whether Merrill Lynch had reason to suspect Mr. Snead lacked capacity, but rather whether Merrill Lynch knew that to be the case."[41] The 208 Order then determined that Plaintiffs "produced no evidence that Merrill Lynch knew Mr. Snead lacked capacity."[42] Notably, Merrill Lynch in its briefing did not assert this was the proper standard; rather, it argued it was entitled to summary judgment because "Plaintiffs have not put forth evidence showing that [Merrill Lynch] was *or should have been aware* that (a) [Mr. Snead] lacked the capacity to instruct [Merrill Lynch] to carry out the disputed transactions; or (b) Wright was allegedly exercising under influence over him."[43]

To the Court's knowledge, there is no case law from the Alaska Supreme Court directly addressing AS § 13.36.079(f). Given this absence of controlling law,

---

[39] Docket 181 at 7, with footnotes references to attached exhibits.

[40] Docket 208 at 5.

[41] Docket 208 at 4.

[42] Docket 208 at 5.

[43] Docket 192 at 2 (emphasis added).

Case No. 3:19-cv-00092-SLG (consolidated), *Snead, et al. v. Wright, et al.*
Order on Motion for Review and Vacation of Orders
Page 10 of 43

Case 3:19-cv-00092-SLG    Document 234    Filed 07/10/25    Page 10 of 43

the Court strives to predict how the Alaska Supreme Court would decide the issue.[44] The 206 Order cited two district court cases, *Schroeder v. James B. Nutter & Co.*[45] and *Johnson as Trustee of Nina J. Cummings Revocable Living Trust v. Wells Fargo Bank, N.A.*,[46] as examples of other jurisdictions barring common law claims pursuant to statutes with language it described as similar to AS § 13.36.079(f).[47]

The district court in *Schroeder v. James B. Nutter & Co.* held that California Probate Code §§ 18100[48] and 18100.5[49] precluded the successor trustees'

---

[44] *See Ticknor v. Choice Hotels Int'l*, 265 F.3d 931, 939 (9th Cir. 2001) (stating that a federal court in a diversity action must approximate state law when the state's highest court had not decided an issue).

[45] Case No. cv-12-03801-MWF-FFMX, 2013 WL 12114824, at *3–5 (C.D. Cal. Jan. 29, 2013) (applying California Probate Code Section 18100.5(f)).

[46] Case No. 2:22-cv-00196-JCM-EJY, 2022 WL 2124392, at *5–7 (D. Nev. May 20, 2022), *report and recommendation adopted*, 2022 WL 2119073 (D. Nev. June 13, 2022) (applying NRS 164.430.1 to bar a negligence claim).

[47] Docket 206 at 23 & n.130.

[48] *See* Cal. Prob. Code § 18100:

> With respect to a third person dealing with a trustee ..., if the third person acts in good faith and for a valuable consideration and without actual knowledge that the trustee is exceeding the trustee's powers or improperly exercising them:
>
> (a) The third person is not bound to inquire whether the trustee has power to act or is properly exercising a power and may assume without inquiry the existence of a trust power and its proper exercise.
>
> (b) The third person is fully protected in dealing with or assisting the trustee just as if the trustee has and is properly exercising the power the trustee purports to exercise.

[49] *See* Cal. Prob. Code § 18100.5:

Case No. 3:19-cv-00092-SLG (consolidated), *Snead, et al. v. Wright, et al.*
Order on Motion for Review and Vacation of Orders
Page 11 of 43

negligence claim against a third party with a reverse mortgage deed of trust because §§ 18100 and 18100.5 protected third parties dealing with a trustee in good faith and without actual knowledge of the trustee exceeding his or her powers.[50] The district court determined that the California Probate Code excused third parties from a duty to investigate the trustee's authority.[51]

In *Johnson v. Wells Fargo Bank, N.A.,* the trustee brought claims for negligence and breach of contract against Wells Fargo after an unauthorized individual, who was also the decedent's granddaughter and co-administer of the decedent's estate, withdrew funds from the trust's Wells Fargo account by

---

(a) The trustee may present a certification of trust to any person in lieu of providing a copy of the trust instrument to establish the existence or terms of the trust. . . .

(b) The certification of trust may confirm the following facts or contain the following information: . . . The powers of the trustee.
...
(f) A person who acts in reliance upon a certification of trust without actual knowledge that the representations contained therein are incorrect is not liable to any person for so acting. A person who does not have actual knowledge that the facts contained in the certification of trust are incorrect may assume without inquiry the existence of the facts contained in the certification of trust. Actual knowledge shall not be inferred solely from the fact that a copy of all or part of the trust instrument is held by the person relying upon the trust certification. Any transaction, and any lien created thereby, entered into by the trustee and a person acting in reliance upon a certification of trust shall be enforceable against the trust assets. However, if the person has actual knowledge that the trustee is acting outside the scope of the trust, then the transaction is not enforceable against the trust assets. Nothing contained herein shall limit the rights of the beneficiaries of the trust against the trustee.

[50] *Schroeder*, 2013 WL 12114824, at *4–5.

[51] *Id.* at *4–5. The district court also found unpersuasive the plaintiffs' argument that HUD and FHA rules imposed a duty on the third party to verify the trust's validity, as these federal guidelines did not preempt California's state law. *Id.* at *3–4.

Case No. 3:19-cv-00092-SLG (consolidated), *Snead, et al. v. Wright, et al.*
Order on Motion for Review and Vacation of Orders
Page 12 of 43

Case 3:19-cv-00092-SLG     Document 234     Filed 07/10/25     Page 12 of 43

presenting a certification of trust purporting to establish her authority to withdraw the funds.[52] The granddaughter had signed the certification of trust under penalty of perjury that she was a trustee authorized to make the withdrawal.[53] The Nevada district court determined that Wells Fargo was entitled to rely on this false representation without inquiry.[54] The plaintiff in the case asserted that Wells Fargo "should have known" that the granddaughter was not a rightful trustee because it should have requested a signed copy of the trust.[55] But the district court held that the trustee's negligence claim failed under a plain language reading of the Nevada statute, which stated: "A person who acts in reliance upon a certification of trust without knowledge that the representations contained therein are incorrect" is "not liable to any person for so acting."[56] The district court held that the plaintiff's pleading that Wells Fargo "knew or should have known" the granddaughter was not the trustee did not state a claim under Nevada law.[57] Rather, the statute "clearly establishes that absent actual knowledge that a representation is false, the party relying on the representation is shielded from liability."[58]

---

[52] *Johnson,* 2022 WL 2124392, at *1.

[53] *Id.*

[54] *Id.* at *6.

[55] *Id.*

[56] *Id.* at *5–7 (internal quotation marks omitted) (quoting Nev. Rev. Stat. § 164.430.1).

[57] *Id.* at *6.

[58] *Id.*

Case No. 3:19-cv-00092-SLG (consolidated), *Snead, et al. v. Wright, et al.*
Order on Motion for Review and Vacation of Orders
Page 13 of 43

Case 3:19-cv-00092-SLG    Document 234    Filed 07/10/25    Page 13 of 43

Citing *Johnson,* the 208 Order concluded that, under the "plain language" of AS §13.36.079(f), Plaintiffs were required to produce evidence showing that Merrill Lynch had "actual knowledge" that Mr. Snead lacked the capacity to confirm the Wire Transfer and Change of Beneficiary.[59]  However, unlike the Nevada statute and the California Probate Code, the Alaska statute adds the word "reasonable" to the reliance requirement in part (f) of AS § 13.36.079.[60]  AS § 13.36.079(f) states:

> A person who acts in reasonable reliance on a certification of trust without knowledge that the representations contained in the certification of trust are incorrect is not liable to another person for acting in reasonable reliance on the certification of trust and may assume without inquiry the existence of the facts contained in the certification.  Knowledge of the terms of the trust may not be inferred solely because the person relying on the certification is holding a copy of part of the trust instrument.

In Alaska, "[t]he reasonableness of a third party's reliance on an alleged principal's manifestations is generally a question of fact" and "only in the most straightforward cases" is it appropriate for a court to decide the issue of reasonable reliance at the summary judgment stage.[61]

The legislative history for AS § 13.36.079 indicates that paragraph (f) was "designed to allow a party to provide a financial institution certain portions of information relating to the trust document so the financial institution can be certain

---

[59] Docket 208 at 4–5.

[60] AS § 13.36.079(f) closely resembles § 1013(f) of the Uniform Trust Code and the Nevada statute, *except* that AS § 13.36.079(f) requires "reasonable reliance" instead of "reliance."

[61] *Airline Support, Inc. v. ASM Capital II, L.P.*, 279 P.3d 599, 606 (Alaska 2012).

Case No. 3:19-cv-00092-SLG (consolidated), *Snead, et al. v. Wright, et al.*
Order on Motion for Review and Vacation of Orders
Page 14 of 43

Case 3:19-cv-00092-SLG     Document 234     Filed 07/10/25     Page 14 of 43

that the trust exists and that they are dealing with the trustees. They can then proceed for example, with a payment from an account and not be responsible for making a mistake because they don't have the full trust document because it may contain certain personal information [the trustees] don't want to share."[62]

Here, there is no issue whether the representations regarding Mr. Snead's role as the trustee made in the Trustee Certifications are incorrect—they are indisputably correct, as Mr. Snead was the trustee with the power to execute transactions involving his accounts with Merrill Lynch.[63] In the Trustee Certifications, Mr. Snead represented that he had the power to make distributions or transfers of the Revocable Trust's assets and exercise all rights associated with the ownership of an annuity, including designating beneficiaries.[64] Rather, the question is whether Merrill Lynch could reasonably rely on those certifications to process the Wire Transfer and the Change of Beneficiary form. Plaintiffs maintain the Trustee Certifications did not absolve Merrill Lynch of its duties owed to Mr. Snead, including a duty to protect its elderly clients from financial exploitation.[65] Neither *Johnson* nor *Schroeder* address capacity or undue influence.[66] And, as

---

[62] *Hearing on S.B. 146 before the S. State Affairs Standing Comm.*, 2007-08 Leg., 25th Sess. (2007) (statement of Attorney Dave Shaftel).

[63] Docket 181 (SEALED) at 10 ("There is no question that Mr. Snead had the authority to execute transactions within the accounts Merrill Lynch held in the name of the Revocable Trust.").

[64] Docket 174-3 at 1–3 (7695 Account); Docket 174-5 at 1–4 (5343 Account).

[65] Docket 181 (SEALED) at Docket 10, 17 (citing FINRA Rule 2165).

[66] *See Johnson,* 2022 WL 2124392, report and recommendation adopted, 2022 WL 2119073;

Case No. 3:19-cv-00092-SLG (consolidated), *Snead, et al. v. Wright, et al.*
Order on Motion for Review and Vacation of Orders
Page 15 of 43

Case 3:19-cv-00092-SLG     Document 234     Filed 07/10/25     Page 15 of 43

set forth below, Plaintiffs provided sufficient evidence of incapacity or undue influence for a reasonable jury to find that Merrill Lynch could not reasonably rely on Mr. Snead's representations in the Trustee Certifications in processing the July 31, 2017 Wire Transfer request and in processing the subsequent Change in Beneficiary to the Transamerica annuity. In sum, the 206 Order and the 208 Order manifestly erred by requiring Plaintiffs to produce evidence that Merrill Lynch had actual knowledge that Mr. Snead either lacked the capacity or was unduly influenced by Ms. Wright to effectuate the Wire Transfer and Change of Beneficiary in order to survive summary judgment. Moreover, Merrill Lynch's reliance on the Trustee Certifications does not address Plaintiffs' assertions that Merrill Lynch breached its fiduciary duty to and acted negligently toward Mr. Snead by allowing Ms. Wright to access Mr. Snead's private information and provide instructions for transactions in her sole interest.[67] Merrill Lynch owes these duties in its capacity as a broker-dealer and investment adviser to Mr. Snead as a client.[68] These duties are separate from Merrill Lynch's status as a third party relying on representations in a trustee's certification.[69]

---

*Schroeder,* 2013 WL 12114824.

[67] Docket 181 (SEALED) at 10.

[68] *See Secs. & Exch. Comm'n v. Criterion Wealth Mgmt. Servs., Inc.*, 599 F. Supp. 3d 932, 948–49 (C.D. Cal. 2022).

[69] *See e.g.*, *Robertson v. Cent. Jersey Bank & Trust Co.*, 47 F.3d 1268, 1277-78 (3rd Cir. 1995) (holding that a financial institution acting as trustee retained a duty of care, including exercising due diligence in managing trust assets, regardless of a broad authorization to retain investments in the trust document).

Case No. 3:19-cv-00092-SLG (consolidated), *Snead, et al. v. Wright, et al.*
Order on Motion for Review and Vacation of Orders
Page 16 of 43

Portions of the 206 and 208 Orders do address whether Merrill Lynch could reasonably rely on the Trustee Certifications, an analysis seemingly at odds with the actual knowledge requirement discussed elsewhere in the Orders. In ruling on a motion for summary judgment, a court must view the facts and draw all reasonable inferences in the light most favorable to the non-moving party.[70] But here, the 206 Order relied primarily on the facts as presented by Defendants and erroneously treated those facts as undisputed. For example, the 206 Order concluded that "the only evidence that might undermine the reasonableness of Merrill Lynch's reliance" on the Trustee Certification for the Wire Transfer was the recording of the telephone conversation during which Mr. Snead confirmed the Wire Transfer.[71] The 206 Order relied on Mr. Snead's three-word confirmation of the fund transfer at the end of the call in which Mr. Snead authorized the transaction to conclude that "Merrill Lynch's reliance was entirely reasonable."[72] Ms. Wright does not speak at all in the limited portion of the call that was recorded.[73] However, the Merrill Lynch employee participating in the conversation, Marlaina Haretuku, noted that Ms. Wright and Mr. Snead were both on the call and informed her that Ms. Wright would be assisting with information and instructions;

---

[70] *Scott v. Harris*, 550 U.S. 372, 378 (2007).

[71] Docket 206 at 22.

[72] Docket 206 at 22; Docket 192-4 (SEALED).

[73] *See* Docket 192-4 (SEALED).

Case No. 3:19-cv-00092-SLG (consolidated), *Snead, et al. v. Wright, et al.*
Order on Motion for Review and Vacation of Orders
Page 17 of 43

and although the funds were being transferred out of an account solely in Mr. Snead's name to the parties' joint account, Ms. Haretuku's notes repeatedly refer to what "they" want when memorializing the transaction.[74]

Plaintiffs have provided other evidence that a reasonable jury could view as undermining Merrill Lynch's reasonable reliance on Mr. Snead's Trustee Certifications. Plaintiffs point to medical records showing that Mr. Snead was hospitalized at the time of some of the alleged actions taken by Ms. Wright and other Merrill Lynch employees to effectuate the Wire Transfer and Change of Beneficiary.[75] On July 31, 2017, Merrill Lynch employee Ms. Haretuku's notes indicate that she spoke to Mr. Snead at 8:05 am that morning regarding the Wire Transfer.[76] The hospital record from that day described Mr. Snead as "extremely lightheaded-near syncopal when trying to get up this morning" and noted that he had received a lidocaine drip until 10:00 am that day.[77]

---

[74] Docket 181-2 at 7 ("John Snead and Lupe Wright called into the office on the line together. John confirmed his information and then let me know that Lupe would be on the call assisting with information and his instructions. He asked that I liquidate, terminate and close the PIA account 5343. They would like the cash JE'd over to the Annuity/Cash holding account ending in 7695. From there they would like to wire funds out to the Alaska USA account. John and Lupe have been in the process of purchasing a home in AZ. They would like to pay in full and not have a home payment, we set up the wire for Thursday when cash would be available.").

[75] Docket 181 (SEALED) at 4–9; Docket 181–9 (SEALED).

[76] Docket 176-1 at 7.

[77] Docket 181-9 (SEALED) at 51 ("Mr. Snead is feeling much better today[—]notably better since stopping lidocaine 10 AM today. He felt very groggy and lightheaded when he was on the highest dose lidocaine. He was extremely lightheaded-near syncopal when trying to get up this morning but feels normal in bed.").

Case No. 3:19-cv-00092-SLG (consolidated), *Snead, et al. v. Wright, et al.*
Order on Motion for Review and Vacation of Orders
Page 18 of 43

Case 3:19-cv-00092-SLG     Document 234     Filed 07/10/25     Page 18 of 43

Plaintiffs also provided evidence showing that Merrill Lynch employees allowed Ms. Wright access to Mr. Snead's financial information and documents. Ms. Wright testified that Mr. Snead's only email address was his business account.[78] However, there is evidence that Merrill Lynch employees discussed Mr. Snead's accounts with Ms. Wright via her Merrill Lynch email address and her personal email address.[79] Ms. Wright's email address and cell phone were used to conduct transactions between Mr. Snead and Merrill Lynch, including the Wire Transfer and Change of Beneficiary.[80] And Ms. Wright's deposition testimony that she didn't know the reason the Change of Beneficiary form was emailed to Mr. Snead[81] is directly contradicted by her email to Ms. Haretuku on July 31, 2017—the same day as the Wire Transfer request—in which Ms. Wright wrote, "John would like to update beneficiary on the annuity. Can you email him a blank annuity beneficiary form."[82] Ms. Wright testified that she and Mr. Snead left the hospital sometime after 4:00 pm on the following day, August 1, 2017.[83] Before leaving the hospital, Ms. Wright testified that she emailed Chris Olsen, the operations manager

---

[78] Docket 174-6 at 13.

[79] Docket 181-3 (SEALED) at 1–4.

[80] *See e.g.*, Docket 181-3 (SEALED) at 3–4.

[81] Docket 174-6 at 19 ("Again, I have no knowledge of how the form came about being e-mailed to John.").

[82] Docket 181-3 (SEALED) at 3.

[83] Docket 174-6 at 16.

Case No. 3:19-cv-00092-SLG (consolidated), *Snead, et al. v. Wright, et al.*
Order on Motion for Review and Vacation of Orders
Page 19 of 43

of Mr. Snead's business, who considered Ms. Wright a friend.[84]  In the email, Ms. Wright stated the following:

> Next time you are here, there is a form he wants you to update in your presence as a witness/POA.  It's a beneficiary update for his annuity.  The form is being e-mailed to Air Land Transport.[85]

Ms. Wright's testimony and emails also indicate that an hour or two after leaving the hospital, she accessed Mr. Snead's locked cabinet at his place of business with his key,[86] accessed his computer at work with his password to print the Change of Beneficiary form, and contacted Mr. Olsen to come to the house to complete the form.[87]  Mr. Snead did not accompany Ms. Wright when she retrieved the form from his place of business.[88]

Mr. Olsen acknowledged his own handwriting on the completed Change of Beneficiary form, but he testified that he did not have any recollection of filling out the form.[89]  Nor did he recall whether Mr. Snead used his signature stamp, or whether he was present when the medallion signature guarantee stamp was

---

[84] Docket 174-6 at 16; Docket 172-6 at 3–4.

[85] Docket 174-6 at 16.

[86] Ms. Wright first testified that she did not have a key to Mr. Snead's place of business.  Docket 174-6 at 14.  But later in her testimony she stated that Mr. Snead gave her the key to retrieve the statements in the locked cabinet.  Docket 174-6 at 16.

[87] Docket 174-6 at 16–17.

[88] Docket 174-6 at 16.

[89] Docket 172-6 at 4.

Case No. 3:19-cv-00092-SLG (consolidated), *Snead, et al. v. Wright, et al.*
Order on Motion for Review and Vacation of Orders
Page 20 of 43

affixed to the form.[90]  Mr. Olsen also testified that Mr. Snead was "pretty physically incapacitated" the last few years of his life and Mr. Snead's medical needs became Ms. Wright's "primary occupation."[91] Further, Ms. Wright's actions violated Merrill Lynch's internal policies requiring that any beneficiary change must be completed directly with the insurance carrier and prohibiting employees from being named as a beneficiary of a client's annuity.[92] In sum, when all reasonable inferences are drawn in Plaintiffs' favor, a reasonable jury could conclude that Mr. Snead was unaware of the completion of the Change of Beneficiary form and did not affix his signature stamp to the form; and further, a reasonable jury could find that Merrill Lynch should have been aware that Mr. Snead lacked the capacity to instruct Merrill Lynch to carry out the disputed transactions and/or that Ms. Wright was allegedly exercising undue influence over him.

For the foregoing reasons, the Court finds, contrary to 206 Order and the 208 Order, that Plaintiffs have provided sufficient evidence that could lead a reasonable jury to determine that Merrill Lynch did not reasonably rely on the Trustee Certifications on July 31, 2017 and on the following days when it effectuated the Wire Transfer and processed the Change of Beneficiary of the

---

[90] Docket 172-6 at 4–5.

[91] Docket 172-6 at 3.

[92] Docket 181-5 (SEALED) at 33 ("Changes to beneficiary designations must be directed to insurance carriers directly."), Docket 181-5 at 78 ("[Merrill Lynch Wealth Management associates/family members] may not be named as beneficiaries, owners, co-owners, annuitants or trustees on life insurance policies or annuity contracts purchased or owned by clients.").

Case No. 3:19-cv-00092-SLG (consolidated), *Snead, et al. v. Wright, et al.*
Order on Motion for Review and Vacation of Orders
Page 21 of 43

Case 3:19-cv-00092-SLG     Document 234     Filed 07/10/25     Page 21 of 43

Transamerica annuity to Ms. Wright. And it was manifest error to conclude that AS § 13.36.079(f) provided Merrill Lynch with "immunity" from suit by virtue of Mr. Snead's Trustee Certifications.

## III. Plaintiffs' Remaining Claims Against Merrill Lynch

Because it was manifest error to dismiss Plaintiffs' claims against Merrill Lynch based on AS § 13.36.079(f), the Court will address Plaintiffs' remaining claims raised in their opposition to Merrill Lynch's summary judgment motion: (A) breach of fiduciary duty as to the John H. Snead Irrevocable Trust; (B) breach of fiduciary duty as to the John H. Snead Revocable Trust; (C) negligence as to the John H. Snead Revocable Trust; (D) negligent hiring, training, and supervision; (E) violation of Alaska's Unfair Trade Practices Act under AS § 45.40.471; (F) vicarious liability; (G) fraud; (H) breach of the covenant of good faith and fair dealing; and (I) punitive damages.[93]

### A. The John H. Snead Irrevocable Trust

It appears to be undisputed that Merrill Lynch did not maintain any accounts associated with the Irrevocable Trust.[94] There was no manifest error in the summary judgment order insofar as it dismissed any remaining claims against Merrill Lynch related to the Irrevocable Trust.[95]

---

[93] Docket 206 at 9–10. The 206 Order did not address Plaintiffs' punitive damages claim.

[94] Docket 175 at 3.

[95] Prior to consolidation, Plaintiffs' claims in one case relating to the Irrevocable Trust were dismissed by Judge Sedwick for lack of standing. *See* Case No. 3:19-cv-00209-SLG, Docket

Case No. 3:19-cv-00092-SLG (consolidated), *Snead, et al. v. Wright, et al.*
Order on Motion for Review and Vacation of Orders
Page 22 of 43

Case 3:19-cv-00092-SLG    Document 234    Filed 07/10/25    Page 22 of 43

**B. Breach of Fiduciary Duty as to the John H. Snead Revocable Trust**

Plaintiffs assert that a fiduciary relationship existed between Merrill Lynch and Mr. Snead that applied to both accounts in the Revocable Trust.[96]  Under Alaska law,

> [A] fiduciary relationship "exists when one imposes a special confidence in another, so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one imposing the confidence." "Fiduciary relationships are generally defined by a level of trust beyond that in ordinary business relationships," and "[l]oyalty and the disavowal of self interest are hallmarks of the fiduciary's role."[97]

This fiduciary relationship "requires the person to act in good faith and with due regard to the interests of the one imposing the confidence."[98]  Under Alaska law, whether a fiduciary duty exists is a legal question,[99] but the duty can be demonstrated by facts that establish its predicate elements.[100]

Plaintiffs assert a breach of fiduciary duty under Alaska law, but they primarily rely on the federal fiduciary standards for investment advisers.[101]  Under

---

146 at 7.

[96] Docket 181 (SEALED) at 11–12.

[97] *Dapo v. State*, 454 P.3d 171, 179–80 (Alaska 2019) (second alteration in original) (quoting *Williams v. Baker,* 446 P.3d 336, 340 (Alaska 2019)).

[98] *Henash v. Ipalook*, 985 P.2d 442, 445 (Alaska 1999) (internal citations and quotations omitted).

[99] *Williams v. Baker*, 446 P.3d at 339 n.7 (Alaska 2019) ("Whether a fiduciary relationship exists is a legal question . . . .").

[100] *See, e.g.*, *id.* at 340 ("The factual findings supported by the record do not establish the existence of such a [fiduciary] relationship between [the appellant] and [the appellee].").

[101] Docket 181 (SEALED) at 11–16.  The Investment Advisers Act of 1940, 15 U.S.C. § 80b-1 *et*

Case No. 3:19-cv-00092-SLG (consolidated), *Snead, et al. v. Wright, et al.*
Order on Motion for Review and Vacation of Orders
Page 23 of 43

federal law, an "investment adviser" is "any person who, for compensation, engages in the business of advising others . . . as to the value of securities or as to the advisability of investing in, purchasing, or selling securities."[102]  Investment advisers owe their clients a duty of loyalty and a duty of care, including a duty to act in their clients' best interest, and seek the best execution of their clients' transactions.[103]  The Supreme Court has recognized that an investment adviser owes a duty of "utmost good faith, and full and fair disclosure of all material facts, as well as an affirmative obligation to avoid misleading his clients."[104]

---

*seq.*, does not explicitly provide for private remedies and § 206 has been interpreted as "simply proscrib[ing] certain conduct," not creating or altering any civil liabilities.  *See Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 17, 19–20 (1979).  *See also* Case No. 3:19-cv-00209-SLG, Docket 103 at 16–17 (asserting that Merrill Lynch owed Mr. Snead "a fiduciary duty to act in his best interest when reviewing and processing documents impacting his investments and w[as] required to exercise the degree of skill and care that a reasonably prudent, skilled, and qualified investment adviser . . . would exercise under the circumstance").

[102] *Criterion Wealth Mgmt. Servs.*, 599 F.Supp.3d. at 948 (alteration in original) (internal quotation marks omitted) (quoting 15 U.S.C. § 80b-2(a)(11)).

[103] *Newton v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 135 F.3d 266, 270 (3d Cir. 1998); *Malouf v. Secs. & Exch. Comm'n*, 933 F.3d 1248, 1265 (10th Cir. 2019); *see also* Sec. & Exch. Comm'n, *Commission Interpretation Regarding Standard of Conduct for Investment Advisers*, *Release No. 5248* (June 5, 2019). To fulfil their duty of loyalty, investment advisers must disclose their conflicts of interest, act in their clients' best interest, and seek best execution for their clients' transactions. *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 503 (3d Cir. 2013); *Newton*, 135 F.3d at 270.

[104] *Secs. & Exch. Comm'n v. Cap. Gains Rsch. Bureau, Inc.*, 375 U.S. 180, 194 (1963) (internal quotation marks and citations omitted); *see also Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 472 n.11 (1977) (recognizing "that Congress intended the Investment Advisers Act to establish federal fiduciary standards for investment advisers"); *Transamerica Mortg. Advisors, Inc.*, 444 U.S. at 17 ("§ 206 establishes federal fiduciary standards to govern the conduct of investment advisers." (internal quotations and citations omitted)).

Case No. 3:19-cv-00092-SLG (consolidated), *Snead, et al. v. Wright, et al.*
Order on Motion for Review and Vacation of Orders
Page 24 of 43

Case 3:19-cv-00092-SLG     Document 234     Filed 07/10/25     Page 24 of 43

In contrast, broker-dealers are any persons "engaged in the business of effecting transactions in securities for the account of others."[105] Because broker-dealers "typically provide transaction-specific recommendations and receive compensation on a transaction-by-transaction basis (such as commissions)," their duty is limited to "deal[ing] fairly with clients and broker[ing] transactions in a way that is suitable to those clients' individual traits and needs."[106]

Merrill Lynch is registered as a broker-dealer and investment adviser with offices in Alaska.[107] Mr. Murphy is registered as an investment adviser in Alaska.[108] Merrill Lynch acknowledges it owed a fiduciary duty to Mr. Snead for the 5343 Account, stating that a "broker handling a discretionary account becomes the fiduciary of his customer in a broad sense."[109] However, Merrill Lynch alleges that its fiduciary duty with respect to that account is limited to investment activity, and does not apply to the initiation of a wire transfer to the customer's joint account.[110] Merrill Lynch also disputes Plaintiffs' contention that it is a fiduciary

---

[105] 15 U.S.C. § 78c(a)(4)(A).

[106] *Criterion Wealth Mgmt. Servs., Inc.*, 599 F.Supp.3d at 948–49 (internal citations and quotation marks omitted).

[107] *Investment Adviser Firm Summary*, U.S. Securities and Exchange Commission, https://adviserinfo.sec.gov/firm/summary/7691 (last visited March 18, 2025).

[108] *Michael Wayne Murphy*, BrokerCheck, https://brokercheck.finra.org/individual/summary/2783765 (last visited March 18, 2025).

[109] Docket 173 at 22–23 (quoting *Leib v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 461 F. Supp. 951, 953 (E.D. Mich. 1978)).

[110] Docket 173 at 23–24.

Case No. 3:19-cv-00092-SLG (consolidated), *Snead, et al. v. Wright, et al.*
Order on Motion for Review and Vacation of Orders
Page 25 of 43

Case 3:19-cv-00092-SLG    Document 234    Filed 07/10/25    Page 25 of 43

regarding the 7695 Account because it did not have discretionary trading authority for that account.[111]

Viewing the facts most favorably to Plaintiffs, there is evidence that Mr. Murphy provided investment advice to Mr. Snead with respect to both the discretionary and the non-discretionary accounts held by the Revocable Trust. Plaintiffs cite to notes taken from an annual review of accounts on August 10, 2016.[112] They allege that these notes show Mr. Murphy provided investment recommendations and advice to Mr. Snead for both Revocable Trust accounts, including how to invest his Transamerica annuity.[113] The Ninth Circuit has also recognized that "particular factual circumstances may serve to create a fiduciary duty between a broker and his customer even in the absence of a discretionary

---

[111] Docket 173 at 23. Prior to consolidation, Judge Sedwick ruled on a Rule 12(b)(6) motion that Plaintiffs' complaint in that action failed to adequately allege a broad fiduciary relationship between Mr. Snead and Mr. Murphy with respect to the 7695 Account that held the Transamerica annuity, but contained "sufficient allegations to support at least a plausible negligence claim" regarding that account. Case No. 3:19-cv-00209-SLG, Docket 146 at 17–18. The First Amended Complaint in this case contains a breach of fiduciary claim as to the entire Revocable Trust. *See* Docket 33-1 at 8.

[112] Docket 181-2 (SEALED) at 8 ("Mike explained to John that he is currently invested in Class C share investments and would like to move John over to the ML1 platform and invest him in a moderate risk portfolio. Mike explained that the benefits to that would be more flexibility in changing investments, clear visibility of the fees, and more investment options. . . Mike said that we would make John's [ ]7695 [account] his operational account and open a new account to move assets into for investing in the PIA moderate portfolio."); Docket 181-2 (SEALED) at 8 ("Mike suggested that John add half to his Trans America Annuity which has a living benefit that compounds at 6% [per] year, and the other half add to his non-retirement investment account."); Docket 181-2 (SEALED) at 9 ("Mike said [it was] a wise place because the annuity has great benefits.").

[113] Docket 181 (SEALED) at 12 & n. 59.

---

Case No. 3:19-cv-00092-SLG (consolidated), *Snead, et al. v. Wright, et al.*
Order on Motion for Review and Vacation of Orders
Page 26 of 43

regarding the 7695 Account because it did not have discretionary trading authority for that account.[111]

Viewing the facts most favorably to Plaintiffs, there is evidence that Mr. Murphy provided investment advice to Mr. Snead with respect to both the discretionary and the non-discretionary accounts held by the Revocable Trust. Plaintiffs cite to notes taken from an annual review of accounts on August 10, 2016.[112] They allege that these notes show Mr. Murphy provided investment recommendations and advice to Mr. Snead for both Revocable Trust accounts, including how to invest his Transamerica annuity.[113] The Ninth Circuit has also recognized that "particular factual circumstances may serve to create a fiduciary duty between a broker and his customer even in the absence of a discretionary

---

[111] Docket 173 at 23. Prior to consolidation, Judge Sedwick ruled on a Rule 12(b)(6) motion that Plaintiffs' complaint in that action failed to adequately allege a broad fiduciary relationship between Mr. Snead and Mr. Murphy with respect to the 7695 Account that held the Transamerica annuity, but contained "sufficient allegations to support at least a plausible negligence claim" regarding that account. Case No. 3:19-cv-00209-SLG, Docket 146 at 17–18. The First Amended Complaint in this case contains a breach of fiduciary claim as to the entire Revocable Trust. *See* Docket 33-1 at 8.

[112] Docket 181-2 (SEALED) at 8 ("Mike explained to John that he is currently invested in Class C share investments and would like to move John over to the ML1 platform and invest him in a moderate risk portfolio. Mike explained that the benefits to that would be more flexibility in changing investments, clear visibility of the fees, and more investment options. . . Mike said that we would make John's [ ]7695 [account] his operational account and open a new account to move assets into for investing in the PIA moderate portfolio."); Docket 181-2 (SEALED) at 8 ("Mike suggested that John add half to his Trans America Annuity which has a living benefit that compounds at 6% [per] year, and the other half add to his non-retirement investment account."); Docket 181-2 (SEALED) at 9 ("Mike said [it was] a wise place because the annuity has great benefits.").

[113] Docket 181 (SEALED) at 12 & n. 59.

Case No. 3:19-cv-00092-SLG (consolidated), *Snead, et al. v. Wright, et al.*
Order on Motion for Review and Vacation of Orders
Page 26 of 43

account."[114]  Based on the foregoing, Plaintiffs have presented sufficient evidence that, if accepted as true, would support a finding that Merrill Lynch had a fiduciary relationship with Mr. Snead for both Revocable Trust accounts.

Mr. Snead's Client Agreement with Merrill Lynch states that "[t]his Agreement is made and will be interpreted under the laws of the State of New York (without regard to its choice of law principles)."[115]  Therefore, Merrill Lynch asserts that its duty was limited by the agreement such that New York law governing breach of fiduciary duty should apply here.[116]  Plaintiffs do not appear to directly address this contention in their opposition to Merrill Lynch's summary judgment motion.[117]

In Alaska, claims involving a professional's alleged breach of a duty of due care resulting from a contractual undertaking "may be reasonably said to arise either in tort or in contract."[118]  Here, Merrill Lynch's fiduciary duty arose both from Mr. Murphy's duties as a registered investment adviser and broker-dealer and also

---

[114] *U.S. Secs. & Exchange Comm'n v. Hui Feng*, 935 F.3d 721, 735 (9th Cir. 2019) (quoting *United States v. Skelly,* 442 F.3d 94, 98 (2d Cir. 2006).

[115] Docket 181-12 (SEALED) at 7.

[116] Docket 192 (SEALED) at 12.  Merrill Lynch contends that Plaintiffs must prove under New York law: (1) the existence of a fiduciary relationship; (2) misconduct by the defendant; and (3) damages that were directly caused by the defendant's misconduct. Docket 192 (SEALED) at 10 (citing *Kurtzman v. Bergstol*, 835 N.Y.S. 2d 644, 645 (2007)).

[117] *See* Docket 181 (SEALED).

[118] *See Lee Houston & Assoc., Ltd. v. Racine*, 806 P.2d 848, 852–55 (Alaska 1991) (applying the Alaska statute of limitations period for contracts, but recognizing that claims of professional malpractice "may be reasonably said to arise either in tort or in contract")

Case No. 3:19-cv-00092-SLG (consolidated), *Snead, et al. v. Wright, et al.*
Order on Motion for Review and Vacation of Orders
Page 27 of 43

Case 3:19-cv-00092-SLG     Document 234     Filed 07/10/25     Page 27 of 43

under the Client Agreement for the Revocable Trust accounts. Because there is sufficient evidence to support a breach of fiduciary duty by virtue of Merrill Lynch's role as an investment adviser to Mr. Snead, Plaintiffs are not required to prove the elements of breach of fiduciary duty under New York law.

Merrill Lynch also alleges that it did not fail to manage Mr. Snead's discretionary account in accordance with his chosen investment objectives and therefore, it did not breach its fiduciary duty.[119] Further, Merrill Lynch counters that even under the assumption that it was required to protect Mr. Snead from financial exploitation, "the evidence shows that [Merrill Lynch] had no knowledge that the Wire Transfer and Change of Beneficiary Form were anything other than transactions of [Mr. Snead]'s own volition and free will."[120]

Plaintiffs respond that Merrill Lynch had a fiduciary duty to protect Mr. Snead from financial exploitation. They maintain that the duty was heightened because of Mr. Snead's age and his declining health at the time of the Wire Transfer and Change of Beneficiary, particularly in light of Merrill Lynch's internal policies and the Financial Industry Regulatory Authority ("FINRA") rules addressing financial abuse of at-risk persons.[121] They assert Merrill Lynch breached not only its heightened duty to protect Mr. Snead from financial exploitation, but also its duty

---

[119] Docket 193 at 12–13.

[120] Docket 193 at 19.

[121] Docket 181 (SEALED) at 19–22.

Case No. 3:19-cv-00092-SLG (consolidated), *Snead, et al. v. Wright, et al.*
Order on Motion for Review and Vacation of Orders
Page 28 of 43

Case 3:19-cv-00092-SLG     Document 234     Filed 07/10/25     Page 28 of 43

to prevent third parties, namely Ms. Wright, from accessing Mr. Snead's private financial information and assets.[122]

In Alaska, "[t]he existence and extent of a duty is a question of law."[123]  In this case, the Court finds that Merrill Lynch's fiduciary duty to Mr. Snead encompassed a duty to protect him from financial exploitation with respect to his assets held through Merrill Lynch.  Although the FINRA rules relating to financial exploitation of seniors were not effective until February 5, 2018[124] and Alaska Statute § 45.56.430 requiring broker-dealers and investment advisers to act in good faith and exercise due care to prevent financial exploitation of adults over age 60 was not in effect until 2019, Merrill Lynch's "Reporting Suspected At Risk Client Financial Abuse Policy," created on June 21, 2011, was in effect at the time of the transactions at issue.[125]  The policy requires Merrill Lynch employees "to report . . . suspected abuse, neglect or exploitation of At-Risk Persons residing in the United States to their supervisor or immediate manager."[126]

---

[122] Docket 181 (SEALED) at 23.

[123] *Parks Hiway Enters., LLC v. CEM Leasing, Inc.,* 995 P.2d 657, 667 (Alaska 2000) (citation omitted).

[124] Docket 181-13 (SEALED).

[125] Docket 181-5 (SEALED) at 38.

[126] Docket 181-5 (SEALED) at 38.

Case No. 3:19-cv-00092-SLG (consolidated), *Snead, et al. v. Wright, et al.*
Order on Motion for Review and Vacation of Orders
Page 29 of 43

Case 3:19-cv-00092-SLG     Document 234     Filed 07/10/25     Page 29 of 43

Under Merrill Lynch's policy, an "At-Risk Person" includes an individual over the age of 60.[127] Internal training materials published by Merrill Lynch on April 27, 2016, also provide guidance for recognizing potential financial abuse, including a change to the At-Risk Person's financial management or new joint accounts, or the presence of a caregiver or other individual who shows excessive interest in the At-Risk Person's finances or assets, is directing a new activity pattern, or is using improper documentation to conduct financial transactions on behalf of the At-Risk Person.[128]

While Merrill Lynch's policies do not carry the force of law, they are a factor to support finding a fiduciary duty by the Court.[129] Further, when the facts are viewed in the light most favorable to Plaintiffs, a reasonable jury could find that Merrill Lynch should have recognized Mr. Snead as an At-Risk individual and therefore breached its heightened duty to him by providing Ms. Wright with access to Mr. Snead's private information without proper authorization.[130] Through exhibits, Plaintiffs show that Ms. Wright was provided with physical copies of forms and account statements and that her cell phone was used to confirm transactions

---

[127] Docket 181-5 (SEALED) at 52.

[128] Docket 181-5 (SEALED) at 46, 61–62.

[129] *See Cummings v. Sea Lion Corp.*, 924 P.2d 1011, 1020 (Alaska 1996) ("While rules of professional conduct do not constitute a basis for malpractice liability in and of themselves, they are relevant to the issue of what duty an attorney owes to a client.").

[130] *See* Docket 181-5 (SEALED) at 21.

Case No. 3:19-cv-00092-SLG (consolidated), *Snead, et al. v. Wright, et al.*
Order on Motion for Review and Vacation of Orders
Page 30 of 43

Case 3:19-cv-00092-SLG    Document 234    Filed 07/10/25    Page 30 of 43

on Mr. Snead's account.[131]  As set forth above, Mr. Snead and Ms. Wright called Merrill Lynch to provide instructions related to the Wire Transfer while Mr. Snead was hospitalized and taking lidocaine.[132]   Further, Merrill Lynch employees assisted Ms. Wright with processing the Change of Beneficiary form that named her as the sole beneficiary of the Transamerica annuity.[133]

In sum, summary judgment to Merrill Lynch is DENIED with respect to Plaintiffs' claim of breach of fiduciary duty regarding the Revocable Trust transactions.

### C. Negligence as to Transamerica Annuity held by the John H. Snead Revocable Trust

In Alaska, negligence requires a duty of care, breach of the duty, causation, and harm.[134]  "In deciding whether a defendant owes a plaintiff a duty of care, Alaska courts first determine whether a duty is imposed by statute, regulation, contract, or existing common law tort doctrine."[135]

In the Second Amended Complaint filed in the second case before case consolidation, Plaintiffs allege that Merrill Lynch and its agents failed to act in Mr.

---

[131] *See, e.g.*, Docket 181-2 (SEALED) at 7; Docket 181-3 at 1–4 (SEALED); Docket 174-6 at 13–14.

[132] *See* discussion *supra* pp. 18-19.

[133] *See e.g.*, Docket 174-6 at 18.

[134] *Dapo v. State*, 454 P.3d 171, 178 (Alaska 2019) (citing *Silvers v. Silvers*, 999 P.2d 786, 793 (Alaska 2000)).

[135] *S. Peninsula Hosp. v. Xerox State Healthcare LLC*, 223 F. Supp. 3d 929, 939 (D. Alaska 2016) (citing *Sowinski v. Walker*, 198 P.3d 1134, 1145 (Alaska 2008)).

Case No. 3:19-cv-00092-SLG (consolidated), *Snead, et al. v. Wright, et al.*
Order on Motion for Review and Vacation of Orders
Page 31 of 43

Case 3:19-cv-00092-SLG    Document 234    Filed 07/10/25    Page 31 of 43

Snead's best interest and failed to exercise "the level of care expected of a prudent person in their position" with respect to the Transamerica annuity.[136]  They allege that Merrill Lynch acted negligently by failing to "undertake[ ] an investigation to determine (1) whether the [Change of Beneficiary] Form reflected the intent of Mr. Snead; (2) whether Mr. Snead had the capacity to make legal and/or financial decisions at the time the [Change of Beneficiary] Form was purportedly executed; (3) whether the [Change of Beneficiary] Form was otherwise valid; and (4) whether the apparent conflict of interest associated with designating Ms. Wright as the sole beneficiary influenced Mr. Snead's purported decision."[137]

Merrill Lynch counters that Plaintiffs cannot show that Ms. Wright's delivery of documents to a Merrill Lynch employee in January and August 2016 proximately caused their losses as these deliveries were too remote have influenced Mr. Snead to go forward with the Change of Beneficiary form in early August 2017.[138] Merrill Lynch also asserts that the delivery of the Change of Beneficiary form directly to a Merrill Lynch employee in August 2017 instead of mailing it to Transamerica did not proximately cause Plaintiffs' losses.[139]

---

[136] Case No. 3:19-cv-00209-SLG, Docket 103 at 17.

[137] Case No. 3:19-cv-00209-SLG, Docket 103 at 16–17.

[138] Docket 192 (SEALED) at 19–20.

[139] Docket 192 (SEALED) at 19–20.

Case No. 3:19-cv-00092-SLG (consolidated), *Snead, et al. v. Wright, et al.*
Order on Motion for Review and Vacation of Orders
Page 32 of 43

Case 3:19-cv-00092-SLG     Document 234     Filed 07/10/25     Page 32 of 43

The Court agrees with Merrill Lynch that the 2016 deliveries are of marginal relevance to the Change of Beneficiary in 2017. But as discussed above, Plaintiffs have sufficiently shown that genuine issues of material fact exist as to whether Merrill Lynch, through its agents, failed to exercise reasonable care with respect to the processing of the Change of Beneficiary form and that this conduct caused Plaintiffs' injury. Summary judgment is DENIED with respect to Plaintiffs' claim of negligence regarding the Change of Beneficiary form.

### D.   Negligent Hiring, Training, and Supervision

In their opposition to Merrill Lynch's summary judgment motion, Plaintiffs claim that Merrill Lynch failed to train and supervise Ms. Wright and the other employees involved in the transfer of assets out of Mr. Snead's Revocable Trust accounts. They allege that the employees' violations of FINRA and Merrill Lynch's internal policy were "so numerous they reflect a systematic failure of training and supervision."[140]

Negligent hiring imposes liability on an employer for exposing the public to an employee who is a known risk or who is an improper person for the specific job.[141] It requires a showing that the employer should have known that hiring the

---

[140] Docket 181 at 30–31. Prior to consolidation, Judge Sedwick granted Merrill Lynch's Rule 12(b)(6) motion to dismiss the negligent hiring, training and supervision claim with respect to the Transamerica annuity in that case. *See* Case No. 3:19-cv-00209-SLG, Docket 146 at 15.

[141] Restatement (Second) of Torts § 317 cmt c (1965); Restatement (Second) of Agency § 213 cmt d (1958); *see also Kroll v. Paul,* Case No. 3KN-86-111, 1993 WL 13563648, at *3 (Alaska 1993).

Case No. 3:19-cv-00092-SLG (consolidated), *Snead, et al. v. Wright, et al.*
Order on Motion for Review and Vacation of Orders
Page 33 of 43

Case 3:19-cv-00092-SLG     Document 234     Filed 07/10/25     Page 33 of 43

employee would lead to the risk of the offending conduct happening.[142]   In their brief in opposition to Merrill Lynch's summary judgment motion, Plaintiffs do not assert any facts related to negligent hiring of Ms. Wright or any other employee.[143]

A negligent training and supervision claim requires demonstration of "a system-wide problem that involves the same wrongdoing or supervisory negligence to correct the problem."[144]   Plaintiffs assert that Merrill Lynch failed to adequately train Ms. Wright and the employees involved in the conversion of Mr. Sneed's assets.[145]   They allege that the "FINRA and internal policy violations that occurred in relation to Mr. Snead's accounts are so numerous they reflect a systematic failure of training and supervision."[146]   Plaintiffs point to the deposition testimony of one employee who "testified that it was not 'reasonable' to expect employees to use Merrill Lynch policy handbooks to resolve issues" and who "did not know whether there was a policy regarding wire transfers from a client's

---

[142] *See* Restatement (Second) of Agency § 213 cmt d (1958) ("The dangerous quality in the agent may consist of his incompetence or unskillfulness due to his youth or his lack of experience considered with reference to the act to be performed. An agent, although otherwise competent, may be incompetent because of his reckless or vicious disposition, and if a principal, without exercising due care in selection, employs a vicious person to do an act which necessarily brings him in contact with others while in the performance of a duty, he is subject to liability for harm caused by the vicious propensity."); *see also* Restatement (Third) of Agency § 7.05 cmt b (2006); *Svacek v. Shelley*, 359 P.2d 127, 130 (Alaska 1961).

[143] *See* Docket 181 (SEALED) at 30–32.

[144] *Pennington v. Providence Health & Servs.*, Case No. 3:10-CV-00191-TMB, 2013 WL 12099643, at *1 (D. Alaska Aug. 27, 2013) (citing *Prenzel v. State*, 169 P.3d 573, 590 (Alaska 2007)).

[145] Docket 181 (SEALED) at 30.

[146] Docket 181(SEALED) at 30.

Case No. 3:19-cv-00092-SLG (consolidated), *Snead, et al. v. Wright, et al.*
Order on Motion for Review and Vacation of Orders
Page 34 of 43

Case 3:19-cv-00092-SLG     Document 234     Filed 07/10/25     Page 34 of 43

account to an employee's account or employees being named as the beneficiary for a client's asset . . . despite the fact that such conduct is expressly prohibited."[147]

However, Plaintiffs do not provide sufficient evidence of system-wide problems involving client accounts or any failure by Merrill Lynch to correct such problem to sufficient to demonstrate a triable issue of fact on this claim. Consequently, summary judgment to Merrill Lynch is GRANTED and Plaintiffs' negligent hiring, training, and supervision claim is DISMISSED.

### E. Alaska's Unfair Trade Practices Act (AS § 45.50.471)

Merrill Lynch urges the Court to dismiss Plaintiffs' UTPA claim because it does not apply to an act or transaction regulated by the Alaska Insurance Code, AS § 21.36.360.[148] Previously, before consolidation, this Court agreed with Merrill Lynch and dismissed Plaintiffs' UTPA claim as to the processing and accepting of the Change of Beneficiary form, reasoning that Ms. Wright's alleged actions fell "squarely within the prohibitions set forth in AS § 21.36.360."[149]

Plaintiffs counter that AS § 21.36.360 does not apply to Merrill Lynch's conduct regarding the Wire Transfer.[150] The Court agrees that AS § 21.36.360 is not applicable to the Wire Transfer and analyzes Plaintiffs' claim under the UTPA

---

[147] Docket 181(SEALED) at 30–31 (citing Docket 174-7 at 8–9, 39).

[148] Docket 173 at 34.

[149] Case No. 3:19-cv-00209-SLG, Docket 146 at 8–9.

[150] Docket 181 (SEALED) at 36.

Case No. 3:19-cv-00092-SLG (consolidated), *Snead, et al. v. Wright, et al.*
Order on Motion for Review and Vacation of Orders
Page 35 of 43

with respect to that transaction.[151]   In their opposition brief, Plaintiffs allege that Merrill Lynch's "practice of allowing employees to access the private information and assets of clients without authority to do so" constitutes a violation of Alaska's UTPA.[152]   They allege that "[t]hese practices are 'deceptive' because they have the capacity and tendency to deceive consumers who rely on Merrill Lynch's assertions that it will dutifully protect their assets in compliance with the law."[153]

To establish a prima facie case of unfair or deceptive acts or practices under AS § 45.50.471, a plaintiff must prove: "(1) that the defendant is engaged in trade or commerce; and (2) that in the conduct of trade or commerce, an unfair act or practice has occurred."[154]   Here, Merrill Lynch is engaged in trade or commerce. The question is whether an unfair act or practice has occurred.

"An act or practice is deceptive or unfair if it has the capacity or tendency to deceive."[155]   To determine "unfairness," Alaska courts consider multiple factors, including:

> (1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes

---

[151] *See* Docket 33-1 at 7.

[152] Docket 181 (SEALED) at 37.

[153] Docket 181 (SEALED) at 37.

[154] *State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 534 (Alaska 1980).

[155] *Id.*

Case No. 3:19-cv-00092-SLG (consolidated), *Snead, et al. v. Wright, et al.*
Order on Motion for Review and Vacation of Orders
Page 36 of 43

substantial injury to consumers (or competitors or other businessmen).[156]

Plaintiffs' opposition brief to Merrill Lynch's summary judgment motion only devotes two paragraphs to this claim. It asserts, without citation to authority, that Merrill's Lynch's practice "of allowing employees to access the private information and assets of clients without authority" to do so violates the Alaska UTPA.[157] But apart from Ms. Wright, Plaintiffs have not shown that Merrill Lynch has engaged in a "practice of allowing employees to access the private information and assets of clients without authority."[158] Therefore, summary judgment is GRANTED to Merrill Lynch on this claim and Plaintiffs' UTPA claim is DISMISSED.

### F. Vicarious Liability

Plaintiffs allege that Merrill Lynch is vicariously liable for the acts of Ms. Wright because her duties as an employee included "providing customer service" and she used her position as a Merrill Lynch employee to provide instructions, physically transmit forms to and from Merrill Lynch "at Merrill Lynch's request," and communicate with Merrill Lynch regarding transactions in Mr. Snead's accounts.[159]

---

[156] *Id.* at 535 (quoting *F.T.C. v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n. 5 (1972)).

[157] Docket 181 (SEALED) at 37.

[158] *See* Docket 181 (SEALED) at 37.

[159] Docket 181 (SEALED) at 34–36.

Case No. 3:19-cv-00092-SLG (consolidated), *Snead, et al. v. Wright, et al.*
Order on Motion for Review and Vacation of Orders
Page 37 of 43

Case 3:19-cv-00092-SLG    Document 234    Filed 07/10/25    Page 37 of 43

They assert that her actions were "reasonably incidental" to her employment at Merrill Lynch.[160]

"The scope of employment is a fact specific inquiry for the jury unless the facts are undisputed or lend themselves to only one conclusion."[161] When determining whether an employee was acting within the scope of her employment for purposes of imposing vicarious liability, Alaska courts look at whether the employee was performing the kind of work the employee was hired to perform, whether the employee was acting within the employer's "authorized time and space limits," and whether the employee was acting in order to further the employer's interests.[162]

Under Alaska law, "[a]n employee's conduct does not fall outside the scope of employment simply because it is discouraged, or even prohibited."[163] And yet the Alaska Supreme Court has held that some purpose to serve the master must be present.[164] This factor may be satisfied when such conduct is "reasonably incidental" to the employee's job responsibilities.[165]

---

[160] Docket 181 (SEALED) at 36.

[161] *Lane v. Juneau*, 421 P.3d 83, 96 (Alaska 2018) (internal quotation marks and citation omitted).

[162] *Id.* at 95.

[163] *Id.* at 94.

[164] *Veco, Inc. v. Rosebrock*, 970 P. 2d 906, 924 n.36 (Alaska 1999).

[165] *Lane,* 421 P.3d at 94–95.

Case No. 3:19-cv-00092-SLG (consolidated), *Snead, et al. v. Wright, et al.*
Order on Motion for Review and Vacation of Orders
Page 38 of 43

Case 3:19-cv-00092-SLG    Document 234    Filed 07/10/25    Page 38 of 43

Plaintiffs' claims against Ms. Wright, taken as true, do not show that her actions involving the Wire Transfer and the Change of Beneficiary form were within the scope of her employment for purposes of vicarious liability. As set forth by this Court in its previous order granting dismissal of this claim in one of the cases prior to consolidation, although Ms. Wright was employed by Merrill Lynch as a Client Associate, she did not work for Mr. Snead's investment adviser, Mr. Murphy, and was not a member of Mr. Murphy's team.[166] There is no evidence that Ms. Wright's job description and duties included assisting Mr. Murphy's clients with forms or processing such forms.[167] Moreover, Ms. Wright's actions only benefitted her as an owner of the joint account into which the Wire Transfer was sent and as the new sole beneficiary of the Transamerica annuity; these actions did not further Merrill Lynch's interests in any manner.[168] In short, Plaintiffs have not demonstrated any genuine disputes of fact on this claim that could render Merrill Lynch vicariously liable for the actions of Ms. Wright.[169] Therefore, summary judgment is GRANTED to Merrill Lynch as to Plaintiffs' vicarious liability claim.

**G. Fraud**

---

[166] Case No. 3:19-cv-00209-SLG, Docket 146 at 12; *see also* Docket 173 at 11, 31.

[167] Case No. 3:19-cv-00209-SLG, Docket 146 at 12; *see also* Docket 173 at 11, 31.

[168] Case No. 3:19-cv-00209-SLG, Docket 146 at 12.

[169] Case No. 3:19-cv-00209-SLG, Docket 146 at 14.

Case No. 3:19-cv-00092-SLG (consolidated), *Snead, et al. v. Wright, et al.*
Order on Motion for Review and Vacation of Orders
Page 39 of 43

Case 3:19-cv-00092-SLG    Document 234    Filed 07/10/25    Page 39 of 43

The 206 Order dismissed Plaintiffs' fraud claims against Merrill Lynch.[170]  In their opposition to Merrill Lynch's summary judgment motion, Plaintiffs admit that "the evidence currently available fails to satisfy the requisite elements of fraud with regard to Merrill Lynch and its employees aside from Wright."[171]  Accordingly, summary judgment is GRANTED to Merrill Lynch as to Plaintiffs' fraud claim.

## H. Covenant of Good Faith and Fair Dealing

Plaintiffs allege that Merrill Lynch and its agents breached the covenant of good faith and fair dealing by violating its internal policies related to the Transamerica annuity.  Specifically, they allege that Merrill Lynch failed to comply with its policy prohibiting employees from being named as a beneficiary of a client's annuity and with its policy that any beneficiary change be completed directly with the insurance carrier.[172]

Under Alaska law, there is an implied covenant of good faith and fair dealing in every contract.[173]  The implied covenant prevents a party from engaging in conduct that will defeat the purpose of the contract and ensures that "neither party will do anything which will injure the right of the other to receive the benefits of the

---

[170] Docket 206 at 23–24.  Before case consolidation, the Court dismissed the fraud claims pleaded in Case No. 3:19-cv-00209-SLG at Docket 146 at 9–11.

[171] Docket 181 (SEALED) at 32.

[172] Docket 181 (SEALED) at 33.

[173] *Casey v. Semco Energy, Inc.*, 92 P.3d 379, 384 (Alaska 2004).

Case No. 3:19-cv-00092-SLG (consolidated), *Snead, et al. v. Wright, et al.*
Order on Motion for Review and Vacation of Orders
Page 40 of 43

agreement."[174]  It works to "effectuate the reasonable expectations of the parties, not add to them."[175]

Here, it is undisputed that Mr. Snead had a contractual relationship with Merrill Lynch through his Client Agreement and that this contract included language notifying Mr. Snead that Merrill Lynch owed "certain fiduciary responsibilities" to him as a client.[176]  When the disputed facts are viewed in the light most favorable to Plaintiffs, a jury could reasonably find that the facts and circumstances surrounding the Wire Transfer, Change of Beneficiary, and the involvement of Merrill Lynch employees, ran counter to Mr. Snead's reasonable expectations under the Client Agreement and the associated fiduciary responsibilities of Merrill Lynch, particularly given that those duties were heightened due to Mr. Snead's status as an At-Risk Person under Merrill Lynch's own policies.

Thus, Plaintiffs' claim for breach of the covenant of good faith and fair dealing against Merrill Lynch is sufficient to survive summary judgment and Merrill Lynch's motion for summary judgment is DENIED as to this claim.

## I. Punitive Damages

---

[174] *Mitford v. de Lasala,* 666 P.2d 1000, 1006 (Alaska 1983) (quoting *Guin v. Ha,* 591 P.2d 1281, 1291 (Alaska 1979)).

[175] *Casey*, 92 P.3d at 384.

[176] Docket 181-12 (SEALED) at 1, 4.

Case No. 3:19-cv-00092-SLG (consolidated), *Snead, et al. v. Wright, et al.*
Order on Motion for Review and Vacation of Orders
Page 41 of 43

Plaintiffs allege that "[t]he facts of the present case establish a pervasive and reckless disregard" of the interests of Mr. Snead and Plaintiffs and are "sufficient to establish a jury question regarding whether punitive damages are appropriate."[177] In Alaska, the standard of proof applicable to a claim for punitive damages is the clear and convincing standard.[178] Punitive damages may be "awarded in excess of actual loss where the wrongdoer's conduct can be characterized as outrageous, such as acts done with malice or bad motives or reckless indifference to the interests of another."[179] "Whether malice is present is a question of fact, and the trier of fact is given broad discretion to grant or withhold punitive damages."[180]

The Court declines to grant summary judgment to Merrill Lynch on the punitive damages claim. At the close of Plaintiffs' case in chief at trial, Merrill Lynch may address the punitive damages claim, as a court should not submit a punitive damages claim to the jury when there is "no evidence that gives rise to an inference

---

[177] Docket 181 (SEALED) at 37–38.

[178] Alaska Stat. § 09.17.020 (b) ("The fact finder may make an award of punitive damages only if the plaintiff proves by clear and convincing evidence that the defendant's conduct (1) was outrageous, including acts done with malice or bad motives; or (2) evidenced reckless indifference to the interest of another person."); *see also Int'l Bhd. of Elec. Workers, Local 1547 v. Alaska Util. Const., Inc.*, 976 P.2d 852, 856 (Alaska 1999).

[179] *Alyeska Pipeline Serv. Co. v. O'Kelley*, 645 P.2d 767, 774 (Alaska 1982) (internal citation and quotation marks omitted).

[180] *Id.* (internal citation omitted).

Case No. 3:19-cv-00092-SLG (consolidated), *Snead, et al. v. Wright, et al.*
Order on Motion for Review and Vacation of Orders
Page 42 of 43

Case 3:19-cv-00092-SLG    Document 234    Filed 07/10/25    Page 42 of 43

of actual malice or conduct sufficiently outrageous to be deemed equivalent to actual malice."[181]

## CONCLUSION

In light of the foregoing, IT IS ORDERED that Plaintiffs' Motion for Review and Vacation of Orders at Docket 213 is GRANTED as set forth herein.

The Court declines to set aside the 206 Order or the 208 Order with respect to Ms. Wright's Motion for Partial Summary Judgment at Docket 172.

As to Merrill Lynch, the orders at Docket 206 and Docket 208 are VACATED. On review, Merrill Lynch's Motion for Summary Judgment at Docket 173 is GRANTED as to Plaintiff's claims against the John H. Snead Irrevocable Trust; of negligent hiring, training, and supervision; violation of Alaska's Unfair Trade Practices Act under AS § 45.40.471; vicarious liability; and fraud. Merrill Lynch's Motion for Summary Judgment is otherwise DENIED.

DATED this 9th day of July 2025.

/s/ Sharon L. Gleason
UNITED STATES DISTRICT JUDGE

---

[181] *Id.* (collecting cases).

Case No. 3:19-cv-00092-SLG (consolidated), *Snead, et al. v. Wright, et al.*
Order on Motion for Review and Vacation of Orders
Page 43 of 43

Case 3:19-cv-00092-SLG    Document 234    Filed 07/10/25    Page 43 of 43